**James Derwood ILIFF, Petitioner,**

v.

**Jerilyn Trije ILIFF, Respondent.**

No. 09–0753.

Supreme Court of Texas.

Argued April 13, 2010.

Decided April 15, 2011.

Thomas M. Michel, Griffith, Jay & Michel, Fort Worth, TX, Georganna L.

Simpson, Jeremy C. Martin, Simpson * Martin LLP, Dallas, TX, Robert E. Raesz Jr., Law Offices of Robert E. Raesz, Jr., Austin, TX, Sarah Katherine Brandon, Law Offices of Sarah Brandon, Austin, TX, Lucy E. Del Prado 'Elly' Dietz, Duvall Gruning & Dietz, San Marcos, TX, for James Derwood Iliff.

Frank B. Suhr, Law Office of Frank B. Suhr, New Braunfels, TX, Michael E. Scanio, Scanio & Scanio, San Marcos, TX, for Jerilyn Trije Iliff.

John B. Worley, Office of the Attorney General, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Austin, TX, for Amicus Curiae The Office of the Attorney General.

Justice WAINWRIGHT delivered the opinion of the Court.

Under the Texas Family Code, may a trial court calculate child support based on earning potential, rather than actual earnings, when the obligor is intentionally unemployed or underemployed, but there is no proof that the obligor's unemployment or underemployment is for the purpose of avoiding child support? Because the language of Texas Family Code section 154.066 does not require such proof, we hold that intent to avoid child support need not be proven for the trial court to apply the child support guidelines to earning potential instead of actual earnings. However, a trial court may properly consider an obligor's intent to avoid child support as a factor, along with other relevant facts, in an intentional unemployment or underemployment analysis. We affirm the judgment of the trial court and the court of appeals.[1]

1. The Attorney General of Texas submitted an amicus curiae brief in support of Jerilyn Iliff.

## I. Factual and Procedural Background

Jerilyn Trije Iliff and James Derwood Iliff married April 7, 1990 and had three children. During their marriage James was the primary earner, working in the chemical industry as a chemical specialist and account manager. Although there was some dispute during the divorce proceedings over the amount of his salary, Jerilyn testified James usually made $90,000 to $100,000 a year, and James's W–2 for the year prior to the divorce showed earnings of $102,000. James quit his job in January 2006. After leaving his employment in the chemical industry, James had no steady gainful employment during the divorce proceedings. Despite the fact that James has Bachelor of Science and Master of Business Administration degrees and admits that he is not disabled and is fit to work, James's only work since quitting his job consisted of operating a tractor and sporadic business management consulting for an estimated total earnings of $3,600 to $4,800 over a two-year period.

Jerilyn filed for divorce on June 28, 2006 in Hays County, six months after James resigned. The trial court entered the final divorce decree on May 5, 2008. The trial court appointed Jerilyn sole managing conservator of the children. James was appointed possessory conservator and was ordered to pay child support. Because the trial court determined that James was intentionally unemployed or underemployed, the trial court exercised its discretion and applied the child support guidelines to James's earning potential, as opposed to his actual earnings. *See* TEX. FAM.CODE § 154.066 (allowing the trial court to set child support based on earning potential where an obligor is intentionally underemployed). The trial court's findings of fact and conclusions of law state:

James Derwood Iliff's own testimony at trial showed that he made in excess of $100,000 in earnings in 2005, the year immediately prior to the filing of divorce. James Derwood Iliff testified at trial that he had left his employment voluntarily in December of 2005. He further testified that he was not disabled or unable to work and had plans to start his own business.

Determining that James's monthly gross earning potential was no less than $5,000, the trial court calculated James's net resources to be $3,662.09 a month and ordered James to pay $1,295.19 per month in child support for his three minor children.

At the court of appeals, James argued that the trial court abused its discretion by awarding child support in excess of the statutory guidelines because there was no evidence that James was intentionally unemployed or underemployed for the purpose of avoiding child support. *Iliff v. Iliff,* 339 S.W.3d 126 (Tex.App.-Austin 2009, pet. granted). The court held that the trial court did not abuse its discretion, rejecting James's argument that the trial court was required to find that his unemployment or underemployment was for "the primary purpose of avoiding child support." *Id.* While acknowledging that other Texas courts of appeals impose a requirement that intentional unemployment or underemployment be for the primary purpose of avoiding child support, the court reasoned that the language of section 154.066 does not require a court to consider avoidance of child support. *Id.* (citing *Hollifield v. Hollifield,* 925 S.W.2d 153, 156 (Tex.App.-Austin 1996, no writ)). We granted Jerilyn's petition to resolve the split among the courts of appeals. *Compare Hollifield,* 925 S.W.2d at 156 ("Section 154.066 does not require the court to consider whether the obligor's 'voluntary unemployment' was for the pri-

mary purpose of avoiding child support."), *with DuBois v. DuBois*, 956 S.W.2d 607, 610 (Tex.App.-Tyler 1997, no pet.) ("[T]here must be evidence that the parent reduced his income for the purpose of decreasing his child support payments.").

## II. Standard of Review

 A trial court has discretion to set child support within the parameters provided by the Texas Family Code. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex.1993); *see also* Tex. Fam.Code §§ 154.121–.123. "A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) (per curiam) (citation omitted); *see also Rodriguez*, 860 S.W.2d at 415. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Worford*, 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

## III. Law and Analysis

Texas Family Code section 154.066 provides that "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." Tex. Fam. Code § 154.066. The question this case presents is: In order to set child support based upon earning potential of the obligor under section 154.066, must the trial court determine that the obligor's unemployment or underemployment is for the purpose of reducing child support?

### A. Disagreement Among the Courts of Appeals

Twelve of the fourteen Texas courts of appeals have answered this question in the affirmative, interpreting Texas Family Code section 154.066 to require proof that the obligor is intentionally unemployed or underemployed for the purpose of avoiding child support. *See, e.g., DuBois*, 956 S.W.2d at 610. Prior to the Tyler Court of Appeals holding in *DuBois*, there was no uniform interpretation of "intentional unemployment or underemployment." *Compare Baucom v. Crews*, 819 S.W.2d 628, 633 (Tex.App.-Waco 1991, no writ) (setting child support based on earning potential simply because the obligor "voluntarily became underemployed by choosing to resign from the employment he had"), *with Woodall v. Woodall*, 837 S.W.2d 856, 858 (Tex. App.-Houston [14th Dist.] 1992, no writ) (requiring evidence that the obligor's "income reduction was designed to obtain a decrease in his child support obligation"). After 1997, the vast majority of the Texas courts of appeals adopted the *DuBois* rule and began to consistently recite its "intent to avoid child support" standard.[2]

2. *See, e.g., In re B.R.*, 327 S.W.3d 208, 213 (Tex.App.-San Antonio 2010, no pet.); *Romero v. Zapien*, No. 13–07–00758–CV, 2010 WL 2543897, at *6 (Tex.App.-Corpus Christi–Edinburg June 24, 2010, pet. denied); *Fondren v. Fondren*, No. 09–08–00187–CV, 2009 WL 2045252, at *5 (Tex.App.-Beaumont July 16, 2009, no pet.); *In re A.B.A.T.W.*, 266 S.W.3d 580, 585 (Tex.App.-Dallas 2008, no pet.); *McLane v. McLane*, 263 S.W.3d 358, 362 (Tex.

App.-Houston [1st Dist.] 2008, pet. denied); *Schaban–Maurer v. Maurer–Schaban*, 238 S.W.3d 815, 826 (Tex.App.-Fort Worth 2007, no pet.); *Beach v. Beach*, No. 05–05–01316–CV, 2007 WL 1765250, at *4 (Tex.App.-Dallas June 20, 2007, no pet.); *In re Marriage of Anderson*, No. 10–06–00361–CV, 2007 WL 3409294, at *3 (Tex.App.-Waco Nov. 14, 2007, no pet.); *In re S.C.S.*, 201 S.W.3d 882, 889 (Tex.App.-Eastland 2006, no pet.); *Garner v.*

Although many of the courts of appeals cases recite the *DuBois* standard, they loosely apply it, providing little or no analysis of how the particular facts of the case indicate a parent's intent to avoid child support. For example, in *Schaban–Maurer v. Maurer–Schaban*, a husband was unemployed for six years before his wife filed for divorce, because, as the wife testified, "[the husband] simply liked sleeping late into the day, watching television, playing on the computer all night, and not having to go to a job." 238 S.W.3d 815, 827 (Tex.App.-Fort Worth 2007, no pet.). The court of appeals did not examine any evidence that the husband was unemployed for the purpose of avoiding child support, but relied on evidence that the husband did not want to hold down a job. *Id.* After citing the *DuBois* standard, the court of appeals held that the husband was intentionally underemployed. *Id.* at 827–28. But the deficiency in this conclusion is the failure to actually apply *DuBois*—a parent cannot be unemployed for the purposes of avoiding child support when the parent became voluntarily unemployed six years before the divorce. Straying from strict adherence to a purpose requirement, many courts of appeals infer intent to avoid child support from "such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential." *See, e.g., Garner v. Garner*, 200 S.W.3d 303, 307 (Tex.App.-Dallas 2006, no pet.) (citing *In*

re *P.J.H.*, 25 S.W.3d at 406). Innocuous facts such as a graduate degree or past jobs are not particularly indicative of a parent's motive or intent to avoid child support obligations.

To interpret "intentional unemployment or underemployment," we first turn to the text of the statute.

### B. Statutory Construction

In construing a statute, the court's purpose is to give effect to the Legislature's expressed intent. "Our role ... is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent." *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex.2003). Where statutory language is unambiguous and only yields one reasonable interpretation, "we will interpret the statute according to its plain meaning." *Id.; see also City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex.2008) ("[W]e construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." (internal citations omitted)).

Section 154.066 gives a trial court discretion to set child support based on the obligor's earning capacity where

*Garner*, 200 S.W.3d 303, 306–07 (Tex.App.-Dallas 2006, no pet.); *Logan v. Logan*, No. 2–05–068–CV, 2006 WL 2167164, at *6 (Tex.App.-Fort Worth Aug. 3, 2006, pet. denied); *Colvin v. Colvin*, No. 13–03–00034–CV, 2006 WL 1431218, at *5 (Tex.App.-Corpus Christi–Edinburg May 25, 2006, pet. denied); *Gaxiola v. Garcia*, 169 S.W.3d 426, 432 (Tex.App.-El Paso 2005, no pet.); *In re A.J.J.*, No. 2–04–265–CV, 2005 WL 914493, at *3 (Tex.App.-Fort Worth April 21, 2005, no pet.); *In re J.C.S.*, No. 06–04–00085–CV, 2005 WL 927173, at *5 (Tex.App.-Texarkana April 18,

2005, no pet.); *In re E.A.S.*, 123 S.W.3d 565, 570 (Tex.App.-El Paso 2003, pet. denied); *In re Z.B.P.*, 109 S.W.3d 772, 783 (Tex.App.-Fort Worth 2003, no pet.); *Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex.App.-Corpus Christi–Edinburg 2002, no pet.); *Galarza v. Galarza*, No. 13–99–797–CV, 2000 WL 35729667, at *2 (Tex.App.-Corpus Christi–Edinburg Nov. 30, 2000, no pet.); *In re P.J.H.*, 25 S.W.3d 402, 405–06 (Tex.App.-Fort Worth 2000, no pet.); *Snell v. Snell*, No. 11–98–00126–CV, 1999 WL 33747973, at *2 (Tex.App.-Eastland Nov. 4, 1999, no pet.).

"the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment." TEX. FAM.CODE § 154.066.[3] Looking to the grammatical structure of the statute, the adjective "intentional" proceeds the phrase "unemployment or underemployment" and thus modifies that phrase. *See McIntyre,* 109 S.W.3d at 746 (quoting, among others, *Long v. United States,* 199 F.2d 717, 719 (4th Cir.1952)) (reasoning that an adverb preceding two verbs connected with the disjunctive conjunction "or" applies to both verbs); *Lewis v. Jackson Energy Coop. Corp.,* 189 S.W.3d 87, 92 (Ky.2005) ("[T]he first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears."). "Intentional" cannot be said to modify "reduction of child support obligations," a phrase not contained in the section. The Legislature did not include in the statute any mention of "purpose," "design," or even "intent" to avoid or reduce child support.

█ There must be a finding that the obligor is intentionally unemployed or underemployed, meaning an obligor consciously chooses to remain unemployed or underemployed. But there is nothing in the statute requiring further proof of the motive or purpose behind the unemployment or underemployment.[4] "We have no right to engraft upon the statute any con-

---

**3.** The Legislature originally enacted this statute in 1989 and amended it as currently worded in 1995. The prior version, section 14.053(f), had slightly different language but is substantively indistinguishable: "If the actual income of the obligor is significantly less than what the obligor could earn *because the obligor is intentionally unemployed or underemployed,* the court may apply these guidelines to the earning potential of the obligor." Act of May 12, 1989, 71st Leg., R.S., ch. 617, § 6, 1989 Tex. Gen. Laws 2030, 2037, *amended by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 160 (current version at TEX. FAM.CODE § 154.066) (emphasis added). James argues that because several cases before the statute's recodification required proof of an intent to avoid child support, the Legislature impliedly approved this interpretation when it re-enacted the statute without substantive change. This argument fails because there was no consistent application of the purpose requirement among the courts of appeals. Just as many, if not more, cases during that time period did not require additional proof of intent to avoid child support. *See, e.g., Roosth v. Roosth,* 889 S.W.2d 445, 454 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Kish v. Kole,* 874 S.W.2d 835, 838 (Tex.App.-Beaumont 1994, no writ); *Baucom v. Crews,* 819 S.W.2d 628, 633–34 (Tex.App.-Waco 1991, no writ). Moreover, the doctrine of legislative acceptance is inapplicable when courts are presented with an unambiguous statute. *See Fleming*

*Foods of Tex., Inc. v. Rylander,* 6 S.W.3d 278, 282 (Tex.1999).

**4.** At oral argument, James for the first time asked this Court to adopt a new standard, not found within the text of the statute or any case law: "intent to make less money." Because a person who is "intentionally unemployed or underemployed" can always be said to be acting with an "intent to make less money," the two are virtually synonymous. James also raised for the first time at oral argument his position that the Legislature's substitution of the term "intentional" for "voluntary" when enacting the 1989 version of section 154.066 requires courts to consider the motive behind the unemployment or underemployment. *See* TEX. SUP.CT. CHILD SUPPORT GUIDELINES, R. 3(e), *superceded by* Act of May 12, 1989 71st Leg., R.S., ch. 617, § 6, 1989 Tex. Gen. Laws 2030, 2037. However, regardless of the use of "intentional" or "voluntary" as an adjective, there is no extra proof requirement in the statute that the unemployment or underemployment be for the purpose of avoiding child support. James's analogies to the definition of intentional murder in criminal law are inapposite. We also note that Black's Law Dictionary defines "voluntary" in terms of "intent." BLACK'S LAW DICTIONARY 1569 (9th ed.2009) (defining "voluntary" as "[d]one by design or intention"). We reject James's proposed interpretations to the extent there is any meaningful distinction.

ditions or provisions not placed there by the legislature." *Duncan, Wyatt & Co. v. Taylor,* 63 Tex. 645, 649 (1885). Because section 154.066 is unambiguous, we decline to read into the statute an extra proof requirement that the Legislature did not express. *See Lee v. City of Houston,* 807 S.W.2d 290, 294–95 (Tex.1991) ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute." (citation omitted)).

## C. Application of Texas Family Code Section 154.066

 The trial court has the discretion to apply the support guidelines to the earning potential of an obligor if it determines an obligor is intentionally unemployed or underemployed.[5] Section 154.066 simply states that a trial court *may* apply the child support guidelines to the earning potential of the obligor in an intentional unemployment or underemployment situation. *See* TEX. GOV'T CODE § 311.016(1) (" 'May' creates discretionary authority or grants permission or power."); *Dallas Cnty. Cmty. Coll. Dist. v. Bolton,* 185 S.W.3d 868, 874 (Tex.2005) (noting that the word "may" should be given its permissive meaning). While the permissive word "may" imports the exercise of discretion, "the court is not vested with unlimited discretion, and is required to exercise a sound and legal discretion within the limits created by the circumstances of a particular case." *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 683 (1956). Moreover, in child support decisions, the "paramount guiding principle" of the trial court should always be the best interest of the child. *See Rodriguez,* 860 S.W.2d at 417 n. 3.

 Although a trial court properly considers whether an obligor parent is unemployed or underemployed for the purpose of avoiding child support, the inquiry under section 154.066 should not be so narrowly circumscribed. While the trial court may consider whether the obligor is attempting to avoid child support by becoming or remaining unemployed or underemployed as a factor in its child support determination, such proof is not required for a court to be able to set child support based on earning potential. However, in certain cases, such evidence may be especially relevant or even dispositive of the matter.

 The law has long recognized parents have a legal duty to support their children during their minority. *In re Henry,* 154 S.W.3d 594, 596 (Tex.2005) (per curiam); *Ex Parte Hall,* 854 S.W.2d 656, 658 (Tex.1993); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 138 (Tex.1977); *see also Yarborough v. Yarborough,* 290 U.S. 202, 221, 54 S.Ct. 181, 78 L.Ed. 269 (1933) ("[I]n order that children may not become public charges the duty of maintenance is one imposed primarily upon the parents, according to the needs of the child and their ability to meet those needs."). A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed. *See Eggemeyer v. Eggemeyer,* 535 S.W.2d 425, 427–28 (Tex.Civ.App.-Austin 1976), *aff'd,* 554 S.W.2d 137 (Tex.1977). Concurrently,

---

5. According to the statutory scheme of the Texas Family Code, the same intentional unemployment/underemployment analysis under section 154.066 may be applied in both original child support orders and modifications of existing child support orders. *See* TEX. FAM. CODE § 156.402 (allowing the court to consider "the child support guidelines ... under Chapter 154 to determine whether there has been a material or substantial change of circumstances under this chapter that warrants a modification of an existing child support order if the modification is in the best interest of the child").

the court must consider "a parent's right to pursue his or her own happiness," *In re E.A.S.*, 123 S.W.3d 565, 570 (Tex.App.-El Paso 2003, pet. denied), with a parent's duty to support and provide for his or her child. The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed.[6] The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal.

Trial courts should be cautious of setting child support based on earning potential in every case where an obligor makes less money than he or she has in the past. James argues that application of section 154.066 will lead to absurd consequences by preventing parents from ever selecting a job which provides a lower income. However, the Legislature addressed this concern, in part, by limiting the application of the statute only to situations where the obligor makes "significantly less" money because of intentional unemployment or underemployment. TEX. FAM.CODE § 154.066. We are wary of the proposition presented by the Attorney General that, other things being equal, receiving more child support will always be in the best interest of the child. Although some financial resources are indispensable to raising and providing for a child, the financial analysis will often not be the end of the court's consideration.[7] A court properly considers the obligor's proffered rebuttal evidence of the reasons for an obligor's intentional unemployment or underemployment. This includes such laudable intentions by obligors who alter their employment situations to spend more time with their children, to live closer to their children in order to attend their events and be more involved in their lives, or to provide their children with better health benefits. Other objectives are also factors, such as whether an obligor alters his or her employment situation to start a new business, to gain further education, to become a public servant, or to address health needs. An active but unfruitful pursuit of employment may also be relevant to the court's child support determination, as well as economic conditions that legitimately preclude full employment. But, we are mindful that such explanations are not always sincere, and the judge as fact finder has latitude to consider the testimony and evidence to make the necessary determinations. *See Murff v. Murff*, 615 S.W.2d 696, 700 (Tex.1981). Such discretion must be exercised within the limits set by the Texas Family Code, particularly Chapter 154 including the child support guidelines, and should always focus on the best interest of the child. To facilitate appellate review and to encourage consistency in the exercise of this discretion across the state, the trial court must make a finding of intentional unemployment or underemployment and its decision to base child support on earnings potential rather than actual earnings must be supported by the record.

---

6. Some of the courts of appeals have applied a similar burden analysis under section 154.066. *See, e.g., McLane v. McLane*, 263 S.W.3d 358, 363 (Tex.App.-Houston [1st Dist.] 2008, pet. denied); *In re E.A.S.*, 123 S.W.3d 565, 570 (Tex.App.-El Paso 2003, pet. denied); *Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex. App.-Corpus Christi–Edinburg 2002, no pet.);

*DuBois v. DuBois*, 956 S.W.2d 607, 610 (Tex. App.-Tyler 1997, no pet.).

7. Moreover, monthly child support awards are not without limits—the child support guidelines only apply to the first $7,500 of an obligor's net monthly resources. TEX. FAM. CODE § 154.125.

### D. Application of Section 154.066 to the Trial Court's Child Support Determination

■ During the Iliffs' divorce trial, the court heard testimony that James voluntarily quit a job making $102,000 a year. After leaving his job, James moved in with his mother who testified that James did not help out with any household expenses or the upkeep of the house but instead spent most of his time reading and watching television. James's sister testified that James was not incapacitated or incompetent, he had no gainful employment since 2006, and he was usually watching television when she visited him. Despite having a B.S., an M.B.A., and almost twenty years' experience in the chemical industry, the only employment James had over the two-year period during his divorce included operation of a tractor and some consulting work for an estimated $200 a month. Although Jerilyn testified to possible alcohol abuse and psychological issues, James refused to comply with the recommended treatment after a court ordered neurological evaluation and further refused to undergo a court ordered psychological evaluation. James admitted to being able to work, however there was little evidence that James had actively sought other comparable employment after his tractor business foundered. On this record, the trial court issued a finding that James was intentionally underemployed and set James's child support payments based on an earning potential of $5,000 a month, or $60,000 a year, $42,000 less than James's salary from the job he voluntarily left. *See Montgomery Indep. Sch. Dist. v. Davis,* 34 S.W.3d 559, 567 (Tex.2000) (noting that the trial court, as fact finder, "is the sole judge of the witnesses' credibility and the weight to be given their testimony, and is free to resolve any inconsistencies" (citation omitted)). Applying the standard elucidated above, we hold the trial court did not abuse its discretion in its child support determination.

### IV. Conclusion

Texas Family Code section 154.066 contains no requirement of proof that an obligor be intentionally unemployed or underemployed for the purposes of avoiding child support. Where a trial court determines that an obligor is intentionally unemployed or underemployed, it is in the court's discretion to set child support based on earning potential. The trial court did not abuse its discretion in setting James's child support based on his earning potential. We affirm the judgment of the court of appeals and disapprove of courts of appeals opinions to the extent they require proof of intent to avoid child support.[8]

---

8. *See, e.g., In re B.R.,* 327 S.W.3d 208, 213 (Tex.App.-San Antonio 2010, no pet.); *Romero v. Zapien,* No. 13–07–00758–CV, 2010 WL 2543897, at *6 (Tex.App.-Corpus Christi–Edinburg June 24, 2010, pet. denied); *Fondren v. Fondren,* No. 09–08–00187–CV, 2009 WL 2045252, at *5 (Tex.App.-Beaumont July 16, 2009, no pet.); *In re A.B.A.T.W.,* 266 S.W.3d 580, 585 (Tex.App.-Dallas 2008, no pet.); *McLane v. McLane,* 263 S.W.3d 358, 362 (Tex. App.-Houston [1st Dist.] 2008, pet. denied); *Schaban–Maurer v. Maurer–Schaban,* 238 S.W.3d 815, 826 (Tex.App.-Fort Worth 2007, no pet.); *Beach v. Beach,* No. 05–05–01316–CV, 2007 WL 1765250, at *4 (Tex.App.-Dallas June 20, 2007, no pet.); *In re Marriage of Anderson,* No. 10–06–00361–CV, 2007 WL 3409294, at *3 (Tex.App.-Waco Nov. 14, 2007, no pet.); *In re S.C.S.,* 201 S.W.3d 882, 889 (Tex.App.-Eastland 2006, no pet.); *Garner v. Garner,* 200 S.W.3d 303, 306–07 (Tex.App.-Dallas 2006, no pet.); *Logan v. Logan,* No. 2–

05–068–CV, 2006 WL 2167164, at *6 (Tex. App.-Fort Worth Aug. 3, 2006, pet. denied); *Colvin v. Colvin*, No.13–03–00034–CV, 2006 WL 1431218, at *5 (Tex.App.-Corpus Christi–Edinburg May 25, 2006, pet. denied); *Gaxiola v. Garcia*, 169 S.W.3d 426, 432 (Tex.App.-El Paso 2005, no pet.); *In re A.J.J.*, No. 2–04–265–CV, 2005 WL 914493, at *3 (Tex.App.-Fort Worth April 21, 2005, no pet.); *In re J.C.S.*, No. 06–04–00085–CV, 2005 WL 927173, at *5 (Tex.App.-Texarkana April 18, 2005, no pet.); *In re E.A.S.*, 123 S.W.3d 565, 570 (Tex.App.-El Paso 2003, pet. denied); *In re Z.B.P.*, 109 S.W.3d 772, 783 (Tex.App.-Fort Worth 2003, no pet.); *Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex.App.-Corpus Christi–Edinburg 2002, no pet.); *Galarza v. Galarza*, No. 13–99–797–CV, 2000 WL 35729667, at *2 (Tex.App.-Corpus Christi–Edinburg Nov. 30, 2000, no pet.); *In re P.J.H.*, 25 S.W.3d 402, 405–06 (Tex.App.-Fort Worth 2000, no pet.); *Snell v. Snell*, No. 11–98–00126–CV, 1999 WL 33747973, at *2 (Tex.App.-Eastland Nov. 4, 1999, no pet.); *DuBois v. DuBois*, 956 S.W.2d 607, 610 (Tex.App.-Tyler 1997, no pet.); *Woodall v. Woodall*, 837 S.W.2d 856, 858 (Tex. App.-Houston [14th Dist.] 1992, no writ); *Casterline v. Burden*, 560 S.W.2d 499, 501 (Tex.Civ.App.-Dallas 1977, no writ); *Anderson v. Anderson*, 503 S.W.2d 124, 126 (Tex.Civ. App.-Corpus Christi 1973, no writ); *McSween v. McSween*, 472 S.W.2d 307, 310 (Tex.Civ. App.-San Antonio 1971, no writ).