**AFFIRMED; Opinion Filed August 26, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-00066-CV**

**IN THE INTEREST OF A.B.P., A MINOR CHILD**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-52013-05**

## MEMORANDUM OPINION

Before Justices Francis, Lang, and Evans
Opinion by Justice Lang

Jimmie Prindle, Jr. appeals the trial judge's order reducing the amount of his child support obligation. Not satisfied with the amount by which his child support obligation was decreased, Prindle argues the trial court abused its discretion by concluding he was intentionally underemployed and awarding an arbitrary amount of prospective child support that he alleges is unsupported by the evidence or child support guidelines. Also, he contends the trial court erred by failing to rule on his request for a retroactive child support decrease. For the reasons stated below, we affirm. Because all dispositive issues are clearly settled in law, we issue this memorandum opinion and affirm. *See* Tex. R. App. P. 47.4.

### I. FACTUAL & PROCEDURAL BACKGROUND

On March 20, 2008, Jimmie Prindle, Jr. ("Father") filed a Petition to Modify Parent-Child Relationship, seeking to decrease his child support obligation. The petition "request[ed] that any decrease be made retroactive to the earlier of the time of service of citation on [Biborka

Zsofia Prindle ("Mother")] or the appearance of [Mother] in this modification action." After a trial on Father's petition, the trial court signed the Order in Suit to Modify, which reduced Father's child support obligation from $1,380 to $850 per month beginning August 1, 2010, and each month thereafter. On October 25, 2010, Father filed a Request for Findings of Fact and Conclusions of Law. When the trial court did not respond, on December 6, 2010, he filed a Notice of Past-Due Findings of Fact and Conclusions of Law. Then, Father filed a motion for new trial on November 17, 2010, and his notice of appeal on January 14, 2011.

On appeal, Father complains the reduction was insufficient and not supported by the evidence. He argues the trial court should have further reduced his obligation, using his actual net resources "in conformity with the presumptive child support guidelines." Also, he contends the trial court abused its discretion by failing to rule on his request for a retroactive child support decrease. Mother responds the evidence supports an implied finding that Father was intentionally underemployed and the amount of child support awarded by the trial court.

Pursuant to the Texas Supreme Court's holding in *Iliff v. Iliff*, this Court abated this case and ordered the trial court judge to make a finding of whether or not Father was intentionally unemployed or underemployed and any other findings and recommendations the trial court deemed appropriate. *See Iliff v. Iliff*, 339 S.W.3d 74, 82 (Tex. 2011).[1] The trial court rendered Findings of Fact and Conclusions of Law dated May 29, 2013, concluding, inter alia, Father was intentionally underemployed. Then, this Court permitted supplemental briefing from both parties only as to the merits of the issues raised by Father in his opening brief. Only Father filed a supplemental brief.

---

[1] Because the relevant considerations of this area of family law were developed with specificity in *Iliff*, we quote extensively from that opinion.

## II. CHILD SUPPORT

### A. Standard of Review

"A trial court has discretion to set child support within the parameters provided by the Texas Family Code." *Iliff*, 339 S.W.3d at 78 (citing *Rodriguez v. Rodriguez,* 860 S.W.2d 414, 415 (Tex. 1993); *see also* TEX. FAM. CODE ANN. §§ 154.121–.123). "A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Id.* (quoting *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)) (citing *Rodriguez,* 860 S.W.2d at 415). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Id.* (citing *Worford,* 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)). "A trial court also abuses its discretion by failing to analyze or apply the law correctly." *Id.* (citing *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992)).

### B. Applicable Law

The Texas Family Code provides that "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the [trial] court may apply the support guidelines to the earning potential of the obligor." TEX. FAM. CODE ANN. § 154.066 (West 2008). "While the permissive word 'may' imports the exercise of discretion, 'the court is not vested with unlimited discretion, and is required to exercise a sound and legal discretion within the limits created by the circumstances of a particular case.'" *Iliff*, 339 S.W.3d at 81 (quoting *Womack v. Berry*, 291 S.W.2d 677, 683 (1956)). "Moreover, in child support decisions, the 'paramount guiding principle' of the trial court should always be the best interest of the child." *Id.* (citing *Rodriguez,* 860 S.W.2d at 417 n.3).

"The law has long recognized parents have a legal duty to support their children during their minority." *Iliff*, 339 S.W.3d at 81 (citing *Yarborough v. Yarborough,* 290 U.S. 202, 221 (1933) ("[I]n order that children may not become public charges the duty of maintenance is one imposed primarily upon the parents, according to the needs of the child and their ability to meet those needs.")). "A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed." *Id.* "Concurrently, the court must consider 'a parent's right to pursue his or her own happiness' with a parent's duty to support and provide for his or her child." *Id.* at 81-82. (quoting *In re E.A.S.,* 123 S.W.3d 565, 570 (Tex. App.—El Paso 2003, pet. denied)). "The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings." *Id.* at 82. "Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed." *Id.* "The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal." *Id.*

"Trial courts should be cautious of setting child support based on earning potential in every case where an obligor makes less money than he or she has in the past." *Id.* "Although some financial resources are indispensable to raising and providing for a child, the financial analysis will often not be the end of the court's consideration." *Id.* "A court properly considers the obligor's proffered rebuttal evidence of the reasons for an obligor's intentional unemployment or underemployment." *Id.* "This includes such laudable intentions by obligors who alter their employment situations to spend more time with their children, to live closer to their children in order to attend their events and be more involved in their lives, or to provide their children with better health benefits." *Id.* "Other objectives are also factors, such as whether an obligor alters his or her employment situation to start a new business, to gain further

–4–

education, to become a public servant, or to address health needs." *Id.* "An active but unfruitful pursuit of employment may also be relevant to the court's child support determination, as well as economic conditions that legitimately preclude full employment." *Id.*

"But, we are mindful that such explanations are not always sincere, and the judge as fact finder has latitude to consider the testimony and evidence to make the necessary determinations." *Id.* (citing *Murff v. Murff,* 615 S.W.2d 696, 700 (Tex. 1981)). "Such discretion must be exercised within the limits set by the Texas Family Code, particularly Chapter 154 including the child support guidelines, and should always focus on the best interest of the child." *Id.* "To facilitate appellate review and to encourage consistency in the exercise of this discretion across the state, the trial court must make a finding of intentional unemployment or underemployment and its decision to base child support on earnings potential rather than actual earnings must be supported by the record." *Id.*

### C. Application of Law to Facts

The record shows Father worked as a "learning manager" with Capital One until he was laid off in June 2007 "due to subprime lending failure" and "the economic situation." He sought and obtained employment with Value Place Property Management in April 2008 where he earned $3,159.77 per month in net income. However, he voluntarily left Value Place on July 7, 2008, because the travel required by his employer interfered with his possession of and access to A.B.P. In September 2008 he obtained his realtor's license, but sold only three houses by the time of trial in 2010 for $3,000 in commissions. He stated he intended to become a real estate broker, after trial, by November 2010, which he expected would increase his income. According to Father, he earned rental income in 2008 and 2009, but that the expenses of maintaining the properties exceeded the amount of income. Additionally, Father testified he received at least $1,069 per month in non-taxable disability benefits from the military. At the time of trial, Father

–5–

was running for a United States Congressional seat, spent ten hours per week as a realtor, and was working on a master's degree in constitutional law and legislative studies. Father testified that, other than running for congress, which he considered to be "basically a full-time job," he was not seeking employment at the time of trial.

In his opening brief, Father contends the reduction of his child support obligation from $1,380 to $850 per month was error because "the trial court abused its discretion in arbitrarily not basing the child support reduction on [Father's] actual net resources as indicated on his tax returns in conformity with the presumptive child support guidelines." Mother responds in her opening brief that, under the Texas Family Code, "a trial court may apply the support guidelines to the earning potential of the obligor if the actual income is significantly less than what the obligor could earn because of intentional unemployment or underemployment." She contends "[t]he evidence would support a finding by the trial court that [Father] was intentionally unemployed or underemployed."

After findings and conclusions were rendered by the trial court, Father filed a supplemental brief. Father contends the trial court's findings and conclusions as to intentional underemployment are erroneous because he met his burden under *Iliff* to offer proof of his current wages. He contends further that Mother failed to meet her burden under *Iliff* to demonstrate Father was intentionally underemployed. According to Father, Mother did not offer any "evidence that Father could have obtained better paying employment had he foregone his congressional campaign and focused exclusively on finding employment similar to Value Place . . . or that Father could have sold more houses had he expended more than 10 hours per week working as a realtor." He asserts that even if Mother demonstrated that he was intentionally unemployed or underemployed, "Father provided sufficient rebuttal evidence indicating that the trial court should have set Father's support obligation based on Father's actual income at the

time of trial." Specifically, he refers to his testimony "that he left the employment of Value Place in July 2008 because it severely impacted his ability to exercise his visitation" and "that the economic conditions occurring between mid-2007 until the time of trial [negatively] affected his employment situation." Also, he cites as rebuttal evidence his testimony describing his efforts to gain employment, to earn income as a real estate agent, to obtain his real estate broker's license, and to campaign for a seat in the United States House of Representatives.

The record does not support Father's arguments that Mother did not meet her burden to present evidence that Father was intentionally underemployed. Mother provided one of Father's "pay stubs" as evidence that showed Father's gross income from Value Place was $3,958 per month and his net income was $3,159.77. Upon cross-examination by Mother, Father admitted that, other than running for congress, he was not seeking employment at the time of trial. Further, Father conceded that if he were not running for congress, he would have the ability to seek and find other employment. Additionally, Father acknowledged that he was qualified to be a substitute teacher, which would provide another source of income, but he did not seek such employment. On this record, we conclude Mother met her burden to demonstrate that Father was intentionally unemployed or underemployed. *See Iliff*, 339 S.W.3d at 82.

Father did offer rebuttal evidence to the contentions of intentional unemployment or underemployment. Father explained he resigned from Value Place to spend more time with A.B.P. Further, he described his efforts to become a public servant by running for congress. Also, he explained the impact of the difficult economic environment on his employment and job search. At the same time, the record shows he worked approximately ten hours per week as a real estate agent, sold only three houses from 2008 to the time of trial in 2010, and chose to run for congress "basically . . . full-time" rather than seeking a full-time job. We recognize reasons offered in rebuttal should be considered by a trial court and some reasons may demonstrate

"laudable intentions." *See Iliff*, 339 S.W.3d at 82. However, the supreme court made clear in *Iliff* that rebuttal ". . . explanations are not always sincere, and the judge as fact finder has latitude to consider the testimony and evidence to make the necessary determinations." *See id.*

Based on this record, the trial court found Father's actual income was significantly less than what he could have been earning and that it was his conscious choice not to seek or obtain employment that generated more income than he was currently earning. Further, the trial court found Father had the ability to obtain employment that generated more income than he was currently earning and that he possessed the requisite education, experience, and competence to secure employment similar to that which he voluntarily relinquished at Value Place. Accordingly, the trial court concluded Father was intentionally underemployed and set his child support payments by applying the child support guidelines to his "net monthly earning potential . . . [of] not less than $3,159.77 . . . and his monthly V.A. benefit . . . in the amount of $1,069.00."

On this record, we cannot say the trial court abused its discretion in finding Father was intentionally underemployed. Further, we conclude the trial court did not abuse its discretion by applying the child support guidelines to his net monthly earning potential and his monthly disability benefits. *See Iliff*, 339 S.W.3d at 78 (citing TEX. FAM. CODE ANN. § 154.066). We decide against Father on his first issue.

### III. RETROACTIVE CHILD SUPPORT DECREASE

As for Father's complaint that the trial court failed to rule on his request for a retroactive child support decrease, the trial court's Memorandum states "[a]ll other requests not granted herein are denied." The record also shows the Order in Suit to Modify Parent-Child Relationship denies "all relief requested in this case and not expressly granted." There is nothing in the record to indicate the trial court did not intend the judgment to finally dispose of the entire case. Accordingly, we conclude the trial court did not abuse its discretion by failing to rule on Father's

request for a retroactive child support decrease because it did rule. *Moritz v. Preiss,* 121 S.W.3d 715, 718–19 (Tex. 2003)) (reaffirming the finality presumption for judgments rendered after a full trial on the merits); *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 201 (Tex. 2001) ("After a full trial on the merits, the statement in a judgment that all relief not requested is denied signifies finality; there is no expectation that the court tried only part of the case, absent an order for severance or separate trials.")). We decide against Father on his second issue.

## IV. CONCLUSION

The trial court's judgment is affirmed.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

110066F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.B.P., A MINOR CHILD

No. 05-11-00066-CV

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-52013-05.
Opinion delivered by Justice Lang.   Justices Francis and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BIBORKA Z. PRINDLE recover her costs of this appeal from appellant JIMMIE PRINDLE, JR.


Judgment entered this 26th day of August, 2013.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE