

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00034-CV

Julio Marcos **AGUILERA**,
Appellant

v.

Delmis Sirey **AGUILERA**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-16322
Honorable Larry Noll, Judge Presiding

Opinion by: Rebeca C. Martinez, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: April 23, 2014

AFFIRMED

Julio Marcos Aguilera appeals from a final judgment of divorce, chiefly complaining about the property division, conservatorship order, and child support. In an opinion dated February 26, 2014, we abated and remanded this appeal to the trial court for the entry of findings pursuant to section 154.130(b) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 154.130(b) (West 2014). The trial court has filed its findings with the court, and after consideration of the issues, we affirm the judgment of the trial court.

## BACKGROUND

Julio and Delmis Sirey Aguilera married in 2003. The couple had one daughter, born in 2001. In 2011, Delmis filed for divorce and Julio filed a counterpetition for divorce. Following a bench trial, the divorce was granted on the basis of irreconcilable differences. The final decree of divorce appointed Julio and Delmis as joint managing conservators of their daughter, and gave Delmis the exclusive right to designate the child's primary residence. Julio was ordered to pay child support in the amount of $250, with $144 of that amount being credited by his social security disability payments. Delmis was awarded the couple's home, and was ordered to assume the mortgage, property taxes, and insurance on the home. In terms of personal property, each party was awarded the items it asked for, with the exception of the power generator, the lawn mower, and the lawn tools, which were awarded to Delmis. The parties were each ordered to pay one half of the $26,000 of credit card debt held in Delmis's name; Julio was ordered to pay the $9,000 credit card debt held in his name. Julio was awarded his social security lump sum award, which he testified was about $15,000, as well as the proceeds, if any, of a pending personal injury lawsuit. The parties were ordered to pay their own legal fees. Julio timely appealed.

## DISCUSSION

In his pro se brief, Julio presents several issues for review. The bulk of his complaints relate to the property division, the conservatorship order, and the child support order. Delmis did not file an appellee's brief. We reasonably, yet liberally, construe appellate briefs so that the right to appellate review is not lost by waiver. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012); *see also Delgado v. Combs*, No. 07–11–00273–CV, 2012 WL 4867600, at *2 (Tex. App.—Amarillo Oct. 15, 2012, no pet.) (mem. op.) ("While *pro se* litigants must comply with the law and rules of procedure, *pro se* pleadings and briefs are to be liberally construed.").

*Standard of Review*

Most of the appealable issues in a family law case are evaluated against an abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support. *See In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.); *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *see also Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866 (Tex. App.—Dallas 2011, no pet).

In family law cases, legal and factual sufficiency challenges do not constitute independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion, and (2) erred in its application of that discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We conduct the applicable sufficiency review when considering the first prong of the test. *Id.* We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.*

*Division of Community Estate*

Julio first argues that the trial court erred in dividing the community assets, specifically in awarding the couple's home to Delmis and in ordering him to pay half of Delmis's credit card debt. The trial court has broad discretion in dividing the marital estate in a manner that the court

deems just and right. *See* TEX. FAM. CODE ANN. § 7.001 (West 2006); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). The trial court is afforded broad discretion in dividing the community estate, and we must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff*, 615 S.W.2d at 698; *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.).

The property division need not be equal, and a trial court may consider many factors when exercising its broad discretion to divide the marital property. *Murff*, 615 S.W.2d at 699. Debts and liabilities incurred jointly by the parties must be considered by the trial court in determining a just and right division of the community estate and must be apportioned to one or both of the spouses. *Bush v. Bush*, 336 S.W.3d 722, 740 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980); *Vannerson v. Vannerson*, 857 S.W.2d 659, 672 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Julio argues that although Delmis financed the house because of his bankruptcy history, he actually made the $22,118 down payment, and the deed to the house contains both his and Delmis's names. Also, Delmis was unemployed from 2003 to 2009 and did not financially contribute to the household; therefore, the trial court should have ordered a 60/40 division of the house as Julio requested. Julio additionally argues that the trial court erred in ordering him to pay half of Delmis's approximately $26,000 credit card debt, because he alleges the cards were not used to pay for community assets, and the debt was acquired solely by Delmis during the three years the couple was separated prior to divorce.

We disagree that the trial court abused its discretion in dividing the community assets and liabilities. First, the award of the house to Delmis was not inequitable given the disparity in the parties' financial conditions and earning abilities. *See Murff*, 615 S.W.2d at 699. Delmis currently works in foodservice for a school district for 35 hours a week and earns $9.20 an hour. Delmis does not have a college degree and her past employment history comprised solely of retail work. In the year prior to trial, she had paid the mortgage and all bills without any help from Julio. In August 2011, Julio received a lump sum social security payment in the amount of approximately $15,000, and, according to Delmis, he did not share any of the money with her. The trial court awarded the entirety of the lump sum payment to Julio. Based on this evidence, we cannot say the trial court abused its discretion in awarding the home to Delmis.

As to the credit card debt, there was testimony that although Delmis had been a stay-at-home mother for much of their daughter's life, she obtained part-time employment in 2009 once Julio was unable to work. She did not, however, earn enough money to pay for all of the family's expenses, so she charged expenses to the credit cards. She testified that the $26,000 in credit card debt is attributed to household expenses. Julio did not present any evidence to contradict her testimony. Accordingly, the trial court did not abuse its discretion in ordering Julio to pay half of the approximately $26,000 in credit card debt acquired during the parties' marriage for the benefit of household expenses.

Based on the above, we conclude that there is some evidence of a substantive and probative character to support the decision of the trial court to award the couple's home to Delmis and to order Julio to pay one half of Delmis's credit card debt. Thus, we conclude that the division was not manifestly unjust and unfair and that the trial court did not abuse its discretion in so dividing the marital assets and liabilities. *See* TEX. FAM. CODE ANN. § 7.001.

*Conservatorship*

Next, Julio maintains that the trial court erred in awarding Delmis "full custody of the child," i.e., in appointing Delmis as primary joint managing conservator with the exclusive right to establish the child's primary residence. Julio asserts that his permanent disability and inability to work full-time would allow him to spend more time with his daughter than Delmis, and that his higher education level would permit him to help his daughter with her homework and also allow him to earn more income than Delmis in the future. He also asserts that his daughter has established stronger bonds with his family than with Delmis's.

The best interest of the child is the primary consideration of the trial court in determining the issues of conservatorship and possession of and access to the child. TEX. FAM. CODE ANN. § 153.002 (West 2014). Trial courts have wide latitude in determining the best interests of a minor child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

Here, the record reflects that the couple's daughter continued residing with her mother in the family home after Julio moved out of the house in November 2011. Julio lives in a small efficiency apartment with only one king-sized bed, and the child has her own room in the family home awarded to Delmis. The child was doing well in school and got along well with her mother. Although Delmis admitted that the child was also happy when with her father, there were no allegations that Delmis was unable to care for or provide for the child. This evidence is sufficient to allow a reasonable person to find that it would be in the best interest of the child to designate Delmis as primary joint managing conservator with the exclusive right to determine the child's primary residence. Additionally, given that Julio produced no evidence to the contrary, the trial court's finding is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust. The trial court had sufficient facts on which to exercise its discretion and made a reasonable decision based on those facts. Accordingly, the trial court did not abuse its discretion

in designating Delmis as the parent with the exclusive right to designate the child's primary residence.

*Child Support*

Next, Julio argues that the trial court erred in setting child support in excess of the statutory guidelines. A trial court has discretion to set child support within the parameters provided by the Family Code. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). The Family Code provides that:

> In applying the child support guidelines for an obligor who has a disability and who is required to pay support for a child who receives benefits as a result of the obligor's disability, the court shall apply the guidelines by determining the amount of child support that would be ordered under the child support guidelines and subtracting from that total the amount of benefits or the value of the benefits paid to or for the child as a result of the obligor's disability.

TEX. FAM. CODE ANN. § 154.132 (West 2014); *In re K.N.C.*, 276 S.W.3d 624, 626 (Tex. App.—Dallas 2008, no pet.). Pursuant to the guidelines, Julio should pay twenty percent of his net monthly resources. TEX. FAM. CODE ANN. § 154.125(b) (West 2014). Julio testified that his only income comes from social security disability insurance in the amount of $817 per month. Twenty percent of that amount is $163.40. Thus, the $250 of support ordered by the trial court exceeds the statutory guidelines by $86.60. Because the trial court ordered that the child support obligation should be offset by the $144 in social security benefits that Julio's daughter receives every month due to Julio's disability, Julio must pay Delmis $106 per month.

At the time of trial, Julio was 56 years old. Julio testified that he was born in Cuba and graduated from the University of Havana as a forensic technician. He moved to Miami in 1980 and briefly worked as a waiter before moving to the "electronic business" field. He worked for Lojack for several years before he and Delmis moved to San Antonio in 2006. In 2007, Julio began working for Time Warner Cable, and was employed there for almost two years. Julio was injured in an on-the-job car accident, and he no longer works due to a permanent disability; he

suffers from back and neck pain that prevents him from sitting for long periods of time. He has incurred $75,000 in medical bills as a result of his injury.

Julio additionally testified that he used to repair computers in his garage to make extra money, and that he could do that again if he had a garage to work in. "I got five technical degrees that pretty much I can use at any time to upgrade the income or add on to the income that I have from social security, plus I have a computer - - a computer desk or technical department in my garage where I used to have a very good clientele until I was forced out of the house . . . ." He stated that he would like to have possession of the couple's home so that he could "start making money out of my garage and offer my daughter a better future." He currently lives in an efficiency apartment. Julio further testified that he is a real estate agent and could make money selling houses. Delmis testified that she works in foodservice for a school district, and previously worked in retail.

The trial court found that the application of the child support guidelines would be inappropriate because Julio's income is significantly less than what he could earn because of intentional unemployment. The trial court further found that Julio is: (1) capable of performing computer work; (2) capable of performing other work in real estate; (3) in receipt of a lump sum social security payment in the amount of $15,800; (4) expected to receive proceeds from an automobile accident lawsuit; and (5) the recipient of monetary gifts from family members. In light of these findings, as well as Julio's testimony that he earned between $75 and $700 extra per week performing computer work, the trial court found that Julio's net monthly earning potential is $1,250. Because 20% of $1,250 is $250, the trial court set child support at $250, with credit for the $144 received from the Social Security Administration for the one child.

Texas Family Code section 154.066 provides that "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or

underemployment, the court may apply the support guidelines to the earning potential of the obligor." TEX. FAM. CODE ANN. § 154.066(a) (West 2014); *Iliff*, 339 S.W.3d at 78. A trial court's finding of intentional unemployment and its decision to base child support on earnings potential rather than actual earnings must be supported by the record. *Iliff*, 339 S.W.3d at 82. As always, the "paramount guiding principle" of the trial court in child support decisions should be the best interest of the child. *Id.* at 81 (citing *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993)).

"The law has long recognized parents have a legal duty to support their children during their minority." *Iliff*, 339 S.W.3d at 81. "A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed." *Id.* "Concurrently, the court must consider 'a parent's right to pursue his or her own happiness' with a parent's duty to support and provide for his or her child." *Id.* at 81-82 (quoting *In re E.A.S.*, 123 S.W.3d 565, 570 (Tex. App.—El Paso 2003, pet. denied)). "The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings." *Id.* at 82. "Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed." *Id.* "The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal." *Id.*

During the divorce trial, the court heard evidence that Julio possessed several degrees and licenses, including one in real estate and another in computer technology. Julio admitted that he was able to work, but explained that without access to his house's garage, he no longer has the ability to earn extra income by repairing computers. The trial court, however, awarded Julio all of his tools, which should allow him to continue repairing computers. In addition, the trial court found that Julio has other avenues of resources, including the lump sum payment he received from

social security, the monetary gifts he receives from family, and the expected settlement proceeds from a personal injury lawsuit. *See* TEX. FAM. CODE ANN. § 154.062(b)(5) (West 2014) (net resources includes social security benefits); *id*. §154.123(b)(3) (West 2014) (court may consider any financial resources available for support of child when setting support in amount other than that established by guidelines). Based on this record, we hold the trial court did not abuse its discretion in its child support determination.

### *Jury Trial*

Julio next complains that he was denied his right to a jury trial. Julio asserts that his counsel told him, without explanation, that the "judge didn't allow a jury trial." Although the record reflects that Julio requested a jury trial, it does not reflect that he paid the jury fee. Even assuming the requisite fee was paid, Julio failed to object to the trial court's conducting a bench trial. *See In re D.R.*, 177 S.W.3d 574, 580 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Sunwest Reliance Acquisitions Grp., Inc. v. Provident Nat'l Assurance Co.*, 875 S.W.2d 385, 387 (Tex. App.—Dallas 1993, no writ). Accordingly, we conclude Julio has waived any error because he failed to object when the trial court proceeded with a bench trial. *See In re K.M.H.*, 181 S.W.3d 1, 16 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (opin. on reh'g).

### *Misrepresentation by Defense Counsel*

Julio contends that his attorney never presented any evidence in court that could change the final decree of divorce. Julio, however, wholly fails to cite any authority to support his contentions. Absent citations to the record, legal authorities or substantive or clear analysis, we conclude Julio has failed to preserve this argument for review. *See Franz v. Katy Indep. Sch. Dist.*, 35 S.W.3d 749, 755 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *Keever v. Finlan*, 988 S.W.2d 300, 314 (Tex. App.—Dallas 1999, pet. dism'd); *see also* TEX. R. APP. P. 38.1(i).

*Fault*

Finally, Julio argues that the trial court erred in granting the divorce on the ground of irreconcilable differences when there was evidence that Delmis committed adultery. A trial court "may grant a divorce in favor of one spouse if the other spouse has committed adultery." TEX. FAM. CODE ANN. § 6.003 (West 2006); *In re Marriage of C.A.S.*, 405 S.W.3d at 383. Adultery can be shown by direct or circumstantial evidence. *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.). There must, however, be clear and positive proof, and mere suggestion and innuendo are insufficient to prove adultery. *Id.*

The record before us does not contain clear and positive proof that Delmis committed adultery. Julio accused Delmis of having an extra-marital affair, but Delmis denied it, and there was no other testimony or evidence presented to support Julio's allegation. Accordingly, we cannot conclude that the trial court erred in granting the divorce on the ground of irreconcilable differences.

## CONCLUSION

Based on the foregoing, we overrule Julio's issues on appeal and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice