

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00215-CV

IN THE INTEREST OF F.R. AKA F.R. AKA F.R., A.L.R., I.R.L. AKA I.R.L., CHILDREN

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 9740, Honorable Carry Baker, Presiding

November 4, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

M.L., mother of the children the subject of this appeal and a Guatemalan national, appeals an order terminating her parental rights to F.R., A.L.R., and I.R.L. The Texas Department of Family and Protective Services (the Department) was named managing conservator in the same termination order. Through five issues, M.L. contends that 1) the trial court lacked jurisdiction over the parties, 2) the evidence was legally and factually insufficient to support termination grounds (D), (E), and (O) and that termination was in

the best interest of the children, and 3) the trial court abused its discretion in appointing the Department as managing conservator of the children.[1] We affirm.

Background

The final hearing began with testimony from M.L.'s immigration attorney. Its substance follows. A deportation order has been entered for M.L., from which she has filed an appeal. She presently is being held in a detention center. Her attorney believed they had grounds for reversal and if that were to happen then she would have another hearing and could possibly be released on bond. Her hearing could be anywhere between two to three years to determine whether she would receive asylum in the U.S. If M.L. is not successful with her appeal, she could be deported back to Guatemala soon thereafter.

Regarding the children the subject of this proceeding, F.R. is a female who was born in Guatemala and at the time of the hearing was 5 years old. A.L.R. and I.R.L. are both males and were born in the United States, ages three and one, respectively, at the time of the hearing. The Department had attempted to contact their fathers who were believed to be living in Guatemala. That effort included contacting the Guatemalan Consulate in Houston, Texas.

Sergeant Leonardo Aviles, of the Muleshoe Police Department, also testified. The substance of his testimony follows. Shortly after 10:00 a.m. on June 23, 2017, he received a call from one of M.L.'s neighbors who reported that the three children were home alone. When he arrived at M.L.'s home, he found the neighbor with two children outside the house. The oldest child appeared to be about age three and the younger

---

[1] The trial court also terminated the parental rights of three alleged fathers, R.S.G., M.P.G., and P. None filed a notice of appeal.

about one or two.  Inside the house, he found an infant appearing to be about age three or four months old.  The children looked as if they had not showered.  Their diapers needed changing, and the infant was crying.  The neighbor told him he found the children outside about 9:30 a.m., which meant they had been home alone from 6:00 a.m. until 9:30.  The officer also said that: 1) I.R.L.'s legs and foot appeared to be in "bad condition" due to lack of bathing and skin care; 2) the children were transported to the police station; 3) M.L. picked them up five hours later; 4) "[M.L.'s] house was dirty," needed to be cleaned and had trash everywhere; and 5) "the kitchen look[ed] like it [had not] been cleaned for a while, greasy. . . . [with] dead roaches or different type of insects, spiders."

Pictures of the home depicted an overturned bucket near the stove.  M.L. conceded that the bucket's placement would have allowed F.R. or A.L.R. to reach the stove.  Another photograph showed an unprotected electrical outlet on the wall near the floor beside the kitchen table.

The next witness was the children's caseworker Elvia Buelna who testified that 1) a report had been received on June 23, 2017, about three young children being left home alone and unattended; 2) she discovered the home "in filthy and unsanitary conditions"; 3) the children were dirty and seemed hungry; 3)  M.L. was, at the time of hearing, in "an immigration detention center" and unable to care for her children; 4) M.L. lacked a stable home for the children; 5) M.L. lacked stable employment; 6) M.L. had not addressed the issues of why her children came into care; 7) after the children were removed, M.L. was given unsupervised visitation over weekends with the plan to reunite them; and 8) at the end of the first visit, the children and their clothes were unclean and the children were hungry.

3

The caseworker also related the events of the second unsupervised visit. I.R.L. had contracted pink eye before arriving. M.L. was given eye drops to use to combat the pink eye and was shown how to use them. Thereafter, the caseworker made an unannounced visit to the home while the children were there and discovered that A.L.R. and I.R.L. had fevers while I.R.L. also was "just limp, no life in him, his eyes were shut with gunk, the eye gunk that comes out, and his cheeks were bright, bright red." When questioned about the children's condition, M.L. "just kind of shrugged her shoulders." The caseworker then transported the children to the emergency room, where "the doctor stated that [I.R.L.] had a grave case of pink eye" and "[b]oth of the boys had high temperatures" ranging from 102.5 to 103.9.

These events and M.L.'s inability to meet her children's basic needs led the Department to keep the children in its care. M.L. "immediately became upset and made threats towards" the caseworker when told of this decision. The threats included cursing her "to God" and cursing the caseworker's children. M.L. also threatened to return the children back to Guatemala if they were returned to her. M.L. then refused to release the children to the caseworker and shoved the latter when effort was made to approach the children. Both F.R. and I.R.L. were in her arms when she shoved the worker. M.L.'s brother also stood near M.L. holding a knife, at the time. That resulted in the caseworker becoming scared, leaving without the children and contacting the police. The police subsequently arrested M.L. and charged her with the offense of terroristic threat, to which charge she pled guilty.

Other evidence revealed that, at the time of the hearing, the children were "in a legal risk home in the Dallas area," doing very well, all together, and happy. The home

4

was safe and clean and large with ample space for the children inside and out. Each child had their own bed. The placement or foster parent expressed interest in adopting the children and in addressing F.R.'s immigration issues. Remaining in the foster home was the best opportunity for the children, according to the caseworker. And, though other foster children were in the home, all the children developed an instant bond and adapted.

M.L. testified as well. She 1) denied leaving the children alone but in the care of others who either left or failed to appear; 2) explained that she could not take the two children running high fevers to the hospital because of a lack of transportation; 3) denied threatening the caseworker (despite pleading guilty to the charge of terroristic threat); and 4) accused the caseworker of upsetting the children the day the police were called.

*Issue One – Jurisdictional Challenge*

By her first issue, M.L. argues that the trial court lost jurisdiction over the proceeding due to the failure to commence trial within the statutory deadlines. *See* TEX. FAM. CODE ANN. § 263.401(a) & (b) (West 2019) (respectively establishing the initial deadline as the first Monday following the one-year anniversary of the date the court appointed the Department temporary managing conservator and permitting a 180-day extension of one-year deadline). We overrule the issue.

The record illustrates that the trial court scheduled the hearing to begin within the initial statutory deadline, extended the deadline by appropriate order, and convened trial before the extension date lapsed, and heard some testimony from the caseworker. Thereafter, the Department's attorney proposed recessing until a later date, to which proposal M.L.'s attorney voiced no objection. The latter also indicated he had filed a motion for continuance. The final hearing resumed on February 20, 2019, and continued

5

over two other settings. M.L. now argues that the Department's presentation at the initial hearing did not constitute the commencement of "trial on the merits" as required by § 263.401(a). M.L. waived her complaint given that the proceeding was controlled by the pre-September 2017 amendment to § 263.401(a).

The amendment applied to termination suits filed on or after September 1, 2017. *In re T.W.*, 557 S.W. 3d 841, 843 n.2 (Tex. App.—Amarillo 2018, no pet.). The suit at bar was filed before then. And, under the pre-amended version, the statutory deadline was non-jurisdictional and required the parent to move for dismissal. *See In re A.F.*, __ S.W.3d __, __, 2019 Tex. App. LEXIS 8563, at *9 (Tex. App.—Fort Worth Sept. 24, 2019, no pet. h.). M.L. filed no motion to dismiss.

*Issue Three – Sufficiency of (D) & (E)*

We address M.L.'s third issue next because by doing so we dispense with the need to address her second issue.[2] By her third issue, M.L. argues the evidence was legally and factually insufficient to support the trial court's predicate findings under subsections 161.001(b)(1)(D) and (E). We address only the subsection (D) finding since it has sufficient evidentiary support. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied) (holding that only one statutory ground is required to support termination).

In reviewing whether the evidence is sufficient, we apply the standards described in *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014), and *In re K.V.*, No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091, at *6-8 (Tex. App—Amarillo Oct. 11, 2016, no pet.) (mem. op.). Next, § 161.001(b)(1)(D) permits termination when clear and convincing

---

[2] In her second issue, M.L. contends the evidence is insufficient to support ground (O).

evidence shows that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). It requires a showing that the child's environment posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *32-34 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (citation omitted). Though the subsection concerns the child's living environment, a parent's conduct may be considered since it may create an environment endangering the child. *Jordan v. Dossey,* 325 S.W.3d 700, 721 (Tex. App.— Houston [1st Dist.] 2010, pet. denied).

Leaving the small children alone on June 23, 2017, in a filthy home, leaving them with access to the stove and an unprotected electrical outlet, leaving them unwashed and unfed before removal and during visits, leaving them without medical attention when sick and suffering from extremely high fevers on another occasion, and engaging in threatening and assaultive conduct when others decided to help the children may reasonably be construed by a fact-finder as clear and convincing evidence that the environment of the children at bar posed a danger to their physical and emotional health. In a bench trial, the court, as fact-finder, is the exclusive judge of the witnesses' credibility and the weight given their testimony; it also is free to resolve any inconsistencies in the evidence. *In re I.M.M.,* No. 07-18-00303-CV, 2019 Tex. App. LEXIS 1387, at *3-4 (Tex. App.—Amarillo Feb. 25, 2019, pet denied) (mem. op.) (juvenile case) (citing *Iliff v. Iliff,* 339 S.W.3d 74, 83 (Tex. 2011)). Thus, the trial court here was free to discredit M.L.'s testimony wherein she denied or attempted to explain away the foregoing circumstances.

*Issue Four – Best Interest*

By her fourth issue, M.L. argues the evidence was legally and factually insufficient to support the trial court's finding that termination was in the best interest of each of the children. We overrule the issue.

To assess whether the best interests of the child warrant termination of parental rights, we consider the evidence in relationship to the *Holley* factors. Those factors are itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), and we implicitly consider them in undertaking our analysis here even though we may not explicitly mention them.

The aforementioned circumstances and evidence supporting the (D) finding are relevant in addressing the best interest equation. To them we add other evidence discussed under our heading "Background" above and found in the record. It consists of 1) M.L.'s threats to return the children to Guatemala, a place she left to escape abuse; 2) the safe, adequate, and stable environment of the children's post-removal placement; 3) their foster parent's interest in adoption; 4) their foster parents' willingness to address F.R.'s immigration concerns; 5) M.L.'s lack of employment and a home at the time of hearing; 6) M.L.'s pending immigration status that may result in deportation; 7) the general tenuousness of finding a relative within the United States with whom the children may be placed; and 8) the happiness of the children with their foster placement.[3] This evidence, when considered together, is sufficient to permit a fact-finder to form a firm conviction or belief that terminating M.L.'s parental rights was in the best interest of the children.

---

[3] M.L. had a younger sister in Nebraska who appeared to be in the United States illegally.

*Issue Five – Appointment of a Non-parent as Managing Conservator*

Through her fifth and final issue, M.L. argues the trial court abused its discretion by appointing the Department sole managing conservator of the children. We overrule the issue.

A final order terminating the parental relationship divests the parent and child of all legal rights and duties with respect to each other. TEX. FAM. CODE ANN. § 161.206(b) (West Supp. 2018). Because M.L.'s parental rights were terminated and we overruled her attack on that decision, she had and has no standing to challenge the Department's appointment as permanent managing conservator. *In re C.J.B.,* No. 05-19-00165-CV, 2019 Tex. App. LEXIS 7470, at *29 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.); *In re D.K.W.*, No. 01-17-00622-CV, 2017 Tex. App. LEXIS 11929, at *15 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.).

Having overruled each of M.L.'s issues, we affirm the final order of the trial court.


Per Curiam