# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-19-00924-CV

---

**Wendi Mae Davidson, Appellant**

**v.**

**Judy Kay Davidson and Robert Lloyd Davidson, Appellees**

---

**FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
NO. C-05-0084-J, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Pro se appellant Wendi Mae Davidson complains of the trial court's order in her suit to modify parent-child relationship (SAPCR) seeking increased contact with her son, S.S., who was fifteen years old when the order was signed.[1] We affirm the trial court's order denying Wendi's petition to modify.

## BACKGROUND

Wendi has two sons—S.S., the subject of this appeal, was born in the fall of 2004, and his older brother, T.R.D., was born in the fall of 2001. In 2006, Wendi was convicted of murdering S.S.'s father and sentenced to twenty-five years in prison; S.S. was less than a year old when his father was killed. *See Davidson v. Davidson*, No. 03-13-00521-CV, 2014 WL

---

[1] Because the parties share a common surname, we will refer to them by their first names. We will refer to the children by their initials.

2191945, at *1 (Tex. App.—Austin May 20, 2014, no pet.) (mem. op.); *Davidson v. State*, 249 S.W.3d 709, 715-16 (Tex. App.—Austin 2008, pet. ref'd). S.S.'s paternal grandfather and Wendi's parents, appellees Judy Kay Davidson and Robert Lloyd Davidson, were appointed S.S.'s joint managing conservators; Wendi was appointed possessory conservator; and Judy and Robert were awarded the right to designate S.S.'s primary residence.[2] The last SAPCR order was signed in 2017.

In 2018, Wendi filed a petition to modify seeking increased access to S.S., alleging that the circumstances had materially or substantially changed, "most notably the child is of the age to legally testify in court on his own behalf." She sought increased contact through—"but not limited to"—phone calls, written correspondence, and visits. At a hearing on the petition to modify, the court heard testimony by Wendi, her parents, and S.S.'s psychologist, and interviewed S.S. in chambers.

Wendi argued at the hearing that it was in S.S.'s best interest to have a relationship with her and that the circumstances had changed because (1) S.S. was "old enough where you can talk to him in Chambers, where he can give the opinion that means something," and (2) her parents were no longer sending her reports or pictures, which she said showed that they "don't want to cooperate and do that, because they're mad and upset at me." Wendi explained that "when I left, my children and I had a wonderful relationship" and that "[j]ust a few years ago, my children still wanted to have a relationship with me, but now suddenly, they don't want to have a relationship with me. So something has happened." She believed that her parents' "resentment has influenced" S.S. and said that even if Judy and Robert had not done or said anything overtly negative, "children still see things, they still hear things, they still watch."

---

[2] T.R.D., who has a different father, was also placed in the care of Judy and Robert.

She noted that her parents did not visit her, write to her, or take her calls, despite her attempts to reconcile with them, and said, "I feel like if not directly, then indirectly my—my kids have been negatively influenced."

Psychologist Johnny Kenneth Burkhalter has treated S.S. since S.S. was a baby and currently sees him at least twice a year and consults with his teachers. Dr. Burkhalter testified that despite "start[ing] off with a very, very difficult challenge," S.S. had grown into "an incredible," "extraordinary young fellow." Dr. Burkhalter credited that to Judy and Robert's "extraordinary parenting" and noted that the circumstances that have contributed to S.S.'s progress have "not included contact with his mother." When Wendi asked whether it would be positive for S.S. to visit her in prison, Dr. Burkhalter said that although there are some circumstances in which such visits can be beneficial, "in this case, I thought it would be bad for the child." He said that Wendi "became a bad mother to" S.S. thirteen years earlier, when she "made a decision, whatever it might have been, that caused [her] to be removed from [her] child," and that "that's not recoverable by letters or cards or a few chats over several months in prison." Dr. Burkhalter also said Wendi is "an intellectual construct to" S.S. and explained to her, "He knows that you're out there. He doesn't have any strong negative hate or whatever for you. You're simply a person who is connected to him biologically."

Dr. Burkhalter believed that requiring S.S. to have contact with Wendi "would be forcing him to have to make an adjustment that is not necessary for his continued developmental progress." He further testified that it would be "abusive" to ask S.S. to "stand up and confront his mother and tell her what he thinks," saying, "He shouldn't have to do that. He didn't ask for it. He should just simply be allowed to be loved by the people he sees as his parents. That's his emotional stability, and I cannot see a single reason, from his perspective, why that stability

3

should be disrupted." Dr. Burkhalter told Wendi that S.S.'s decision not to respond to her correspondence was not due to action by Judy or Robert but instead due to the lack of a mother/child relationship "because you removed yourself from him." He saw "no benefit for [S.S.] at this current time" to be forced into a relationship with Wendi. In fact, he thought imposing such a requirement now would hurt the chances of S.S. and Wendi building a relationship in the future, explaining that S.S. will probably want to get to know Wendi when he is an adult but that "if he keeps getting pounded like this and pushed, and if we somehow forced him to have to do that, I think you're just hurting the long-term chance you got." Dr. Burkhalter believed S.S. would tell him or his grandparents if S.S. decided he wanted to contact Wendi.

Judy testified that she loved Wendi but thought she was "a bad influence" and not a good person. She denied that she or Robert had poisoned S.S. or his brother against Wendi, saying, "[T]hat is not correct and that's just not good for the kids. Sorry, you have to understand that. We do what's best for them." Judy acknowledged that she and Robert had not gone to see Wendi in prison for "[a] very long time," that they refused to answer her calls, and that they did not respond to her letters. She explained that when Wendi sent letters to her sons, "[t]hey sit on the table, and if [the boys] want to look at them, they do; and if they don't, they don't." Judy also said, "I know you love them, but it's always, I feel, has been a possession thing for you. It's because they're yours. The dog is yours, the horse is yours, everything is yours."

The trial court denied Wendi's petition to modify and issued findings of fact, including: that Wendi had not had visitation with S.S. in more than ten years; that S.S. "does not exhibit any behavior showing a desire to speak with" Wendi; that S.S. "stated clearly to the Court—in an articulate, mature, and perceptive manner—that he does not want contact with" Wendi; that "there is no credible evidence that it would be in the child's best interest to have

4

physical visitation with" Wendi or "to require that the child be made available for telephone visitation"; and that "neither the circumstances of the child, nor any of the conservators has materially and substantially changed since the prior order was entered."

## DISCUSSION

Wendi argues that she established both a material and substantial change in the parties' circumstances and that it would be in S.S.'s best interest to have a relationship with her.[3] She also argues that she has the "the constitutional right to have access to her son."

When deciding issues of access to a child, the courts' primary consideration is always the child's best interest. Tex. Fam. Code § 153.002; *Brook v. Brook*, 881 S.W.2d 297, 298 (Tex. 1994). In considering a child's best interest, courts look to the non-exclusive "*Holley* factors*": the child's desires, the child's present and future emotional and physical needs, emotional and physical danger posed to the child now and in the future, the parenting abilities of the individuals seeking custody, programs available to assist the would-be parents, the individuals' or agency's plans for the child, the stability of the proposed homes, any acts or omissions by the parent that might show an improper parent-child relationship, and any excuse for such acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *Fish v. Lebrie*,

---

[3] Wendi also asserts that the trial court's failure to subpoena a witness, her brother, harmed her ability to establish S.S.'s best interest. Wendi asserted at trial that her brother is a CPS employee who had repeatedly told her that "she should be allowed a relationship with her son," and on appeal, she argues that he "would have been able to provide valuable information to the court regarding the parental alienation issue and the best interest of the child" and that the trial court erred in not issuing a subpoena for his testimony as she requested. However, Wendi did not present an offer of proof about what his testimony actually would have been, and her testimony about statements her brother allegedly made cannot suffice to show that the trial court abused its discretion in conducting the hearing without Wendi's brother's testimony. *See In re R.F. III*, 423 S.W.3d 486, 492 (Tex. App.—San Antonio 2014, no pet.) (appellant did not provide affidavit or other offer of proof to show that testimony was material).

5

No. 03-09-00387-CV, 2010 WL 5019411, at *2 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.); *Harris v. Texas Dep't of Fam. & Protective Servs.*, 228 S.W.3d 819, 828 (Tex. App.—Austin 2007, no pet.).

Best interest and the determination of issues of access to and possession of a child are "intensely fact driven," *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002), and we will not disturb a trial court's decision unless the record shows that the court clearly abused its discretion, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011); *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied). Thus, we uphold a ruling unless the appellant can demonstrate that the trial court acted arbitrarily or unreasonably or without reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Iliff*, 339 S.W.3d at 133.

A trial court does not abuse its discretion if some probative and substantive evidence supports its order. *Iliff*, 339 S.W.3d at 134. In this kind of case, our traditional sufficiency standards of review overlap the abuse-of-discretion standard, requiring us to conduct a two-pronged inquiry, first asking whether the trial court had sufficient information upon which to exercise its discretion and next asking whether the court erred in its application of discretion. *Id*. "A traditional sufficiency review comes into play with regard to the first question, and we must then determine whether, based on the evidence, the trial court's decision was reasonable." *Id*. We will not substitute our judgment for that of the trial court, *id.* at 133-34, which is in "a better position to determine what will be in the best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent," *J.R.D.*, 169 S.W.3d at 743.

A trial court may modify a SAPCR order if the change would be in the child's best interest and the circumstances of the child or the other parties involved have materially and substantially changed. Tex. Fam. Code § 156.101(a). The determination as to whether there has been a material and substantial change of circumstances "is not guided by rigid rules and is fact specific," and although a child's changing age may constitute a material change, "[i]ncrease in age alone is not a changed circumstance to justify modification unless changed needs are shown." *Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied).

Wendi argues that she established that allowing her increased access would be in S.S.'s best interest, noting the statutory presumptions in favor of contact between a parent and her child. *See, e.g.*, Tex. Fam. Code §§ 153.001(a)(1) (Texas's public policy is to "assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child"), .251(b) ("It is the policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child."). She further argues that she loves S.S. and "is concerned about his best interest," as indicated by "the fact that she has repeatedly sought contact with her son through the district court over the years." She asserts that although her parents said she was a "bad influence," they "could not give one example of that being the case" and had not had contact with her in years. She also contends that because she has not had contact with S.S. in more than ten years, there is no evidence that allowing her increased contact would not be in his best interest.

Wendi acknowledges that there was testimony that S.S. does not desire contact with her but argues that "it's hard to know how much weight that should carry" because he had expressed an interest in having a relationship with her several years ago, asserting that the

7

change is due to "parental alienation by appellees." She contends that the testimony by both Dr. Burkhalter and S.S.'s amicus attorney was biased and unfair, noting that neither witness interviewed Wendi and that both receive fees paid by appellees. Finally, Wendi insists that she poses no danger to S.S., that visitation in prison would always be supervised, and that S.S.'s best interest "cannot be served without the child being allowed a relationship with his mother."

However, although Wendi argues that the testimony by her parents, Dr. Burkhalter, and S.S.'s amicus attorney is suspect for various reasons, it was for the trial court to consider the witnesses' demeanor and assess their credibility. *See J.R.D.*, 169 S.W.3d at 743. Those witnesses all testified that S.S. did not want to have contact with Wendi, that he was thriving in his current arrangements, that he was given access to all of Wendi's communications, that it would not be in his best interest to be required to have increased contact with Wendi, and that Judy and Robert had not poisoned S.S. against Wendi.

Dr. Burkhalter explained why he recommended that S.S. should not be required to have visits or increased contact with Wendi. He said that S.S., who was an infant when Wendi was incarcerated, thinks of Wendi as an "intellectual construct" but has no feelings of a relationship with her. He further testified that he believed requiring increased contact now would harm Wendi's prospects of having a relationship with S.S. in the future. In addition, the trial court spoke to S.S. in chambers and found that S.S. does not want contact with Wendi. The court also found that there was no credible evidence that it would be in S.S.'s best interest to have physical visitation with Wendi or to be "made available for telephone visitation."

The court's findings are supported by probative and substantive evidence. *See Iliff*, 339 S.W.3d at 134. The record therefore does not indicate that the trial court abused its discretion in determining that Wendi's requested modification of the SAPCR order would not be

8

in S.S.'s best interest. Because we uphold that determination that the requested change would not be in S.S.'s best interest, we need not consider whether Wendi established a material and substantial change in the parties' circumstances. *See* Tex. Fam. Code § 156.101(a). We overrule Wendi's first and second issues.

In her third issue, Wendi asserts that the denial of access to S.S. violates her constitutional rights. However, as we noted in another appeal filed by Wendi related to her older son, a parent's rights to the companionship, care, custody, and management of her children "are constitutional interests deemed far more precious than any property right. Parental rights, however, are not absolute. The emotional and physical interests of the child must not be sacrificed to preserve the parent-child relationship." *In re T.R.D.*, No. 03-09-00150-CV, 2010 WL 2428426, at *4 (Tex. App.—Austin June 18, 2010, no pet.) (mem. op.) (citations omitted). As in that case, the record reflects that the trial court considered the evidence, weighed Wendi's and S.S.'s interests, and made a determination that favors the child's best interest. *See id.* The relationship between Wendi and S.S. has not been severed, and Wendi is allowed to send communications to S.S., who has access to them if he wishes. We cannot hold on this record that the trial court's refusal to require the child to have in-person visits or phone calls with Wendi was an abuse of discretion and a violation of Wendi's constitutional rights. *See id.* We overrule Wendi's third issue on appeal.

**CONCLUSION**

We have overruled Wendi's issues on appeal. We therefore affirm the trial court's order denying Wendi's petition to modify.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed: January 28, 2021