# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00707-CV

---

**Alicia Cluck, Appellant**

**v.**

**MetroCare Services - Austin, LP, Appellee**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-08-003222, THE HONORABLE CLEVE WESTON DOTY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

After the trial court signed an order dismissing her lawsuit against appellee MetroCare Services - Austin, LP, Alicia Cluck filed this appeal complaining that the order was an abuse of the trial court's discretion. We affirm the trial court's order.

### FACTUAL AND PROCEDURAL SUMMARY

In December 2006, while employed by MetroCare, Cluck slipped while getting out of an ambulance in which she was working. In September 2008, she sued MetroCare, claiming that she suffered back injuries when she fell and that MetroCare was liable for negligence in its training and supervising of its employees and for the actions of its employees through the doctrine of respondeat superior.

Little action was taken in the case until 2016,[1] when there was a flurry of filings related to summary judgment, depositions, a motion to quash, and other activity. In September 2016, Cluck filed a first amended petition adding as defendants MetroCare's insurers and several MetroCare-related entities and asserting new causes of action. In late September, the trial court granted MetroCare's motion to strike the first amended petition and denied MetroCare's motion for summary judgment. In January 2017, Cluck filed a second amended petition, and MetroCare filed a notice of removal explaining that after the trial court struck the first amended petition, Cluck had filed the struck claims in a separate lawsuit, which had been removed to federal court "based on federal question jurisdiction under ERISA," the Employee Retirement Income Security Act of 1974, § 29 U.S.C. 1001. In the subject case, MetroCare explained, although the second amended petition only added a claim for breach of contract, Cluck had stated that she anticipated filing a trial amendment to assert all the claims that had been contained in the struck petition, claims that MetroCare asserted were governed by ERISA. The case was remanded from federal court in 2019 and again sat without activity until MetroCare filed another motion for summary judgment in 2021.

On October 14, 2021, the trial court filed an order titled "Order Denying MetroCare's First Amended 'No-Evidence' Motion for Summary Judgment and Orders to Avoid Dismissal for Want of Prosecution." The order required that the parties mediate the case within sixty days, obtain a trial setting for the case to be tried within six months, and obtain a backup trial setting for the case to be tried within nine months. The order also stated that if the case was

---

[1] MetroCare timely answered Cluck's petition in October 2008. Between that date and 2016, Cluck filed an October 2009 motion for a discovery control plan, which was disposed of via an agreed order signed in December 2009; a Rule 11 agreement was filed in mid-2010; MetroCare's first motion for no-evidence summary judgment was filed in September 2012; and Cluck filed a summary-judgment response in October 2012.

not settled or tried to a verdict within nine months, "the case SHALL BE DISMISSED FOR FAILURE TO PROSECUTE the case without notice of further hearing," unless Cluck filed a motion to retain and showed "good cause for why she has failed to prosecute this case within the guidelines set out in the Texas Rules of Judicial Administration." Two weeks later, Cluck proposed a mediator, and on November 17, she filed a notice of trial setting, stating that she had requested a trial setting for January 10, 2022, with announcements on December 13, 2021.

On December 14, following a December 9 mediation, MetroCare circulated a draft "Full and Final Release, Compromise and Settlement Agreement." The draft included a signature line for Tracy Cluck, Cluck's husband. It also stated that Cluck had represented that Medicare and Medicaid had not paid her medical expenses, that she did not anticipate that she would be eligible for such benefits for at least thirty months, and that Cluck would defend and indemnify MetroCare for any Medicare and Medicaid claims "relating to or which may arise in the future in connection with the accident and/or the injuries, which are or may be covered by Medicare or Medicaid." On December 21, L.T. Bradt, one of Cluck's attorneys, emailed MetroCare's attorney stating that he was removing his wife from life support that day and thus was "a little short on time and patience."[2] He summarized his understanding of the agreement reached during mediation and stated that Tracy Cluck was "not a party to the suit and will not be

---

[2] When Cluck filed her original petition, she was represented by the Ross Law Group. At some point she changed counsel, and from at least September 2016 until September 2022, was represented by Zachary Hudler. The first document in the appellate record that included L.T. Bradt as one Cluck's attorneys was filed in August 2021, and in January 2022, Bradt filed a document naming himself as lead counsel. Hudler continued to be active in the case, attending the mediation in December 2021 when Bradt and Bradt's wife were both very ill with Covid, emailing opposing counsel after mediation and providing Cluck's version of proposed settlement agreements, and signing a March 2022 affidavit in support of Cluck's motion to enforce the settlement agreement that stated that he was "an attorney for Plaintiff Alicia Cluck." Hudler filed a motion to withdraw on September 9, 2022, and the trial court signed an order granting that motion on September 29.

3

signing anything"; that "[t]here was no mention of any agreement to indemnify anyone for anything"; that in his experience, indemnification "requires separate consideration and mention of same in the structure of the settlement"; and that Cluck "will not be indemnifying anyone."

On January 3, 2022, Cluck filed a notice of settlement stating that the parties had reached a mediated agreement but that settlement documents had not yet been finalized because of the holidays and counsel's illness. On January 5, Hudler emailed a redlined settlement agreement without the indemnification language and Tracy Cluck's signature line and stating that the settlement check should be made payable not to Cluck and Hudler but to "Alicia Cluck and Tracy D. Cluck, Attorney IOLTA." MetroCare responded on January 10:

> Our client is willing to accept the revisions you made to pages 2 and 3 of the original draft release, relating to the recipients of the settlement proceeds and release of the Federal Court Judgment. I have redlined the accepted changes on the attached revised settlement agreement. If indeed Mr. Cluck and/or his IOLTA account are to be named on the settlement check, then we will need a W-9 and written confirmation from Mrs. Cluck that Mr. Cluck does indeed represent her and she consents to payment in part to the IOLTA account. The other revisions your clients suggested are rejected. This revised version of the release is the only version to which our client will agree. No further revisions will be accepted.

> You will recall from mediation last month that one of the reasons we did not reach a settlement was the difference in opinion over indemnity. Our client considers indemnity an essential part of a settlement agreement. I was hopeful that after we did not settle at mediation, your clients might have been more open to the idea of indemnity, as it is a part of any personal injury settlement. Another essential part of any personal injury settlement is the satisfaction of Medicare and Medicaid liens. The fact that your clients insisted on removing representations about the existence and satisfaction of any such liens is a red flag that prevents reaching a settlement. And another red flag is Mr. Cluck's refusal to sign off on the agreement. You will recall that when we attempted to settle the case in 2016, our client requested that Mr. Cluck also be a party to the settlement. His response was to insist on separate consideration of $1 million for his signature. (I have attached a copy of that letter.) We do not know what claims Mr. Cluck has or thinks he has against MetroCare or any of the Released Parties identified in the attached proposed settlement agreement. However, his insistence on refusing to

4

release any claims he has or thinks he has (or even identify them) is another red flag that prevents settlement.

On February 8, MetroCare filed a notice of trial setting stating that the case was set for trial beginning June 6.

On May 2, Cluck filed a Motion to Enforce Settlement Agreement, asserting that the parties had reached a settlement in the December 2021 mediation but that MetroCare had refused to proceed. Cluck attached December 9, 2021 post-mediation emails between the mediator and the attorneys. In those emails, the mediator stated:

> This will confirm that we have concluded the Mediation in this case and the parties have agreed to resolve the case on the following terms:
>
> 1. Defendant and/or its insurance carrier shall pay to plaintiff the sum of $175,000;
>
> 2. Defendant and/or its insurance carrier shall provide to plaintiff a full and complete release of all liens/or claims which arose from the Federal Court case involving the ERISA claims;
>
> 3. Plaintiff shall provide to Defendant and/or its insurance carrier a full and complete release of all claims in this matter.

MetroCare replied, "That is agreed, in principle. We will prepare a comprehensive, formal settlement agreement and provide it to opposing counsel within five business days," and Cluck responded, "[Cluck] is in agreement. Let's get this done. Thanks." Cluck characterized those emails as a Rule 11 agreement and asserted that MetroCare was insisting on adding terms that went beyond the mediated agreement. Specifically, she argued, MetroCare had refused to pay

the agreed-upon settlement amount unless Tracy Cluck, who was not a party to the suit, released any claims he might have against MetroCare.

MetroCare responded on July 1, arguing that although the parties had reached an agreement in principle, they were never able to reach a final agreement because Cluck refused to release or fully identify "any outstanding medical and/or Medicare/Medicaid liens arising out of her alleged injuries"; she refused to indemnify MetroCare from such liens; and Tracy Cluck—who MetroCare asserted was, "in reality, her co-litigant"—refused to sign the settlement agreement, "despite making it clear that he intends to continue this litigation in one form or another until he gets $1 million." MetroCare noted that the parties' attempted 2016 mediation failed in part because Tracy Cluck refused to join in the proposed settlement agreement and instead demanded "a separate payment of $1 million for himself, in addition to any settlement amount to be paid to his wife." As an exhibit, MetroCare attached an October 2016 letter from Hudler stating:

> To the extent that your offer requires Mr. Cluck to sign a release, you are requesting something that you and your insured are not entitled to in these lawsuits. However, upon payment of $1,000,000 to him Mr. Cluck is willing to sign a release for his claims against your insured. Otherwise, that request is rejected.
>
> To the extent that your offer requires Mrs. Cluck to execute a hold harmless as to anyone, that offer is rejected.
>
> The satisfaction of outstanding medical or Medicare liens (if any) is a matter between Mrs. Cluck, me and those entities. My client and I will not agree, as a condition precedent to your payment, to satisfy those liens, if any there are.
>
> We also cannot agree to dismiss the lawsuit against your insured with prejudice as same would raise a bar of res judicata to my client's claims against the other responsible parties. We will only agree to release those claims asserted in the first lawsuit against MetroCare Services Austin LP with an agreement that those claims will not be reasserted in the future.

6

On July 7, the trial court signed an order denying Cluck's motion to enforce.

On August 16, MetroCare sent a letter to the trial court asserting that because the October 2021 order provided that the case would be dismissed without notice or further hearing if not settled or tried to a verdict within nine months, the case had been "automatically dismissed on July 14, 2022 [i.e., 9 months from the date the Order was entered], and the Court lost jurisdiction when its plenary power expired 30 days later." On August 17, Bradt responded by letter that MetroCare had omitted "very important facts" that meant the trial court should deny MetroCare's request: Bradt and his wife had been diagnosed with Covid on November 29, 2021; Bradt's wife was admitted to the hospital on December 3 and transferred to the Intensive Care Unit a week later; he had to remove her from life support on December 21; as a result, he had suffered from depression and "long Covid" since that date and had withdrawn from a number of cases, only "return[ing] to a more or less normal practice" in "the last couple of months"; and the case had stalled not due to Cluck's lack of interest but instead due to Bradt's "physical and psychological condition." Further, counsel asserted, although the parties mediated an agreement, "[w]hen [Cluck] tried to enforce the settlement reached, [MetroCare] started throwing in terms and conditions that were never discussed in mediation, much less included in the email string that constitutes the Rule 11 agreement between the parties." Bradt asserted that until the motion to enforce was ruled on, Cluck "did not have a duty to set this matter for trial, as same would have been redundant and a waiver of the mediated settlement agreement." Further, Bradt stated:

> [A]fter the motion to enforce was denied, [Cluck] promptly requested a trial setting. [Cluck] also attempted to get a back-up trial setting but was rejected in that attempt by the Travis County District Clerk. Contrary to [Bradt's] experience in Harris, Fort Bend, Galveston, Brazoria and Montgomery Counties, the District Clerk did not inform defense counsel of the request for a trial setting. [Bradt] did

7

not become aware of this until the Friday before this case was set for trial, which was August 15.

Bradt stated that he was "in the process of requesting a trial setting for the week of October 24 and will have that request filed today."  In a motion to retain filed August 31, Bradt made the same arguments and stated that he had "requested and obtained a trial setting for this case in November."

On September 29, 2022, the trial court held a hearing on MetroCare's motion to enter an order of dismissal.  At the hearing, Bradt presented the same arguments he raised in his letter and his motion to retain.  He explained that the case was set for trial in about six weeks, to start November 7 and asserted that he had "done what we needed to do to progress this case in light of the circumstances that [he] found [himself] in."  The trial court acknowledged and empathized with Bradt and the loss of his wife but then stated, "But when I went back and looked at the original order, it gave you a long period of time.  I mean, you could have set trial within probably eight months of that order being entered, which takes about ten minutes.  And the order's clear."  On October 3, 2022, the trial court signed a final order finding that Cluck had not complied with the October 2021 Order's "clear instructions" to prosecute her case by July 14.  The court found that MetroCare was "entitled to a final order confirming the dismissal, in light of the parties' dispute about that dismissal," and stated that it was entering a final order "confirming that the case has been dismissed and that no further dispute, whether factual or legal, remains to be adjudicated."

## ANALYSIS

Cluck argues that the trial court abused its discretion in signing the final order because she and her attorney should not be "faulted or punished for circumstances beyond their

control or for the obduracy of [MetroCare's] counsel." She also argues that her "failure to 'check every box' in the [October 2021 order] was for reasons not of her or her counsel's making." In light of the circumstances, she insists, the court acted without reference to guiding rules and principles or at the very least acted arbitrarily or unreasonably in dismissing the case.

Initially, we note that MetroCare argues that the case automatically dismissed on July 14, 2022, by operation of the October 2021 order. We disagree. The October 2021 order provided that the case would be dismissed "without notice or further hearing, unless [Cluck] files a motion to retain and shows good cause for why she has failed to prosecute." The internal language of the October 2021 order thus requires that Cluck's assertion of good cause be considered and determined by the trial court before the case could be dismissed. In the September hearing, the trial court discussed whether Cluck had sufficiently complied with the October 2021 order, agreeing that although the October 2021 order "looked to have become final" when the July deadline passed, Bradt had presented a "substantive question" about whether the case had been automatically dismissed. The court said, "[Y]ou litigated that question, which required this hearing, which required you-all to get a final order that the courts will—or the district clerk will treat as a final order, which should then trigger your [appellate] deadline, Mr. Bradt." We hold that the case was not automatically dismissed when the nine-month deadline passed and could not have been dismissed by operation of law on July 14, 2022, solely due to the passing of the deadline set out in the October 21, 2021 order.

"Trial courts are generally granted considerable discretion when it comes to managing their dockets" and may dismiss a case for want of prosecution under their inherent authority or under Rule 165a of the Rules of Civil Procedure. *In re Conner*, 458 S.W.3d 532, 534 (Tex. 2015) (orig. proceeding) (per curiam). We will not reverse a dismissal for want of

prosecution absent a clear abuse of discretion, which occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Enriquez v. Livingston*, 400 S.W.3d 610, 614 (Tex. App.—Austin 2013, pet. denied) (quoting *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011)). "With respect to factual matters, an abuse of discretion occurs only when the record shows 'the trial court could reasonably have reached only one decision.'" *Dobroslavic v. Bexar Appraisal Dist.*, 397 S.W.3d 725, 728 (Tex. App.—San Antonio 2012, pet. denied) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

Under the common law, a trial court has "the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence." *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999). The court may consider (1) the length of time a case has been on file, (2) the extent of activity in the case, (3) whether trial settings have been requested, and (4) the existence of reasonable excuses for delay. *Dobroslavic*, 397 S.W.3d at 729.

As relevant here, Rule 165a provides for dismissal for want of prosecution of a case that is "not disposed of within [the] time standards promulgated by the Supreme Court." *Conner*, 458 S.W.3d at 535 (quoting Tex. R. Civ. P. 165a(2)). Those time standards provide that a trial court should, "so far as reasonably possible," ensure that a non-family-law civil case such as this be brought to trial or final disposition within eighteen months from appearance date. Tex. R. Jud. Admin. 6.1(a)(1), *reprinted in* Tex. Gov't Code, tit. 2, subtit. F app.; *see Cross v. Dow AgroSciences LLC*, No. 03-02-00506-CV, 2003 WL 22409301, at *2 (Tex. App.—Austin Oct. 23, 2003, no pet.) (mem. op.).

In October 2021, about thirteen years after the case was filed, the trial court signed an order clearly stating exactly what Cluck had to do to avoid the case being dismissed—

the case had to be settled or tried to conclusion by July 14, 2022. Cluck took steps to comply, mediating the case in early December and obtaining initial trial settings. However, when the parties attempted to draft settlement documents following mediation, similar issues arose as had in 2016—Cluck refused to indemnify MetroCare and Tracy Cluck refused to join in the agreement, and MetroCare insisted on those inclusions. Those conflicts arose in December 2021, around the time Bradt fell ill with Covid and tragically lost his wife to the same illness. The parties continued to negotiate into January 2022, but on January 10, MetroCare stated that it would not agree to a settlement that did not include indemnification language and Tracy Cluck's signature, and in early February, it filed a notice stating that the case was set for trial beginning June 6. In early May, several months later, Cluck filed a motion to enforce contending that MetroCare was refusing to proceed with the mediated settlement, citing the parties' December 9 emails as a Rule 11 agreement. The trial court signed an order overruling that motion on July 7.

On July 14, the deadline set out in the October 2021 order expired. As of that date, Cluck had not filed a motion to retain showing good cause for her failure to prosecute the case within the statutory time guidelines. In mid-August, after MetroCare filed its motion asserting that the case had been dismissed by operation of law, Cluck filed a letter response and then a motion to retain. She asserted that her failure to close the case by July 14 should be excused due to (1) Bradt's illness and depression related to the loss of his wife, (2) his misunderstanding of local rules related to trial settings, and (3) MetroCare's intransigence in insisting on concessions not discussed or agreed to in the mediation. She also asserted that while her motion to enforce was pending before the trial court she had no duty to set the case for trial

because it "would have been redundant and a waiver of the mediated settlement agreement." She stated in her motion to retain that the case was set for trial in November 2022.

On this record, we cannot conclude that the trial court abused its discretion in dismissing the case, *which had been pending on the docket for fourteen years*, for want of prosecution. The case sat largely dormant for more than seven years, until a flurry of activity in 2016 that resulted in its two-year removal to federal court. After it was remanded in 2019, it again sat without activity for more than a year until MetroCare filed another motion for summary judgment in June 2021.

After the case had been on file for more than thirteen years, the October 2021 order gave Cluck a clear nine-month deadline to bring her case to completion. At that point, the parties attempted to settle their dispute, but it was reasonably clear as of January 2022 that the parties could not reach a full agreement. MetroCare filed a notice of a June trial setting in February.[3] In May, Cluck filed her motion to enforce arguing that the December 9, 2021 emails between the attorneys trying to negotiate a final mediated settlement agreement should be viewed as a Rule 11 agreement. And despite the January discussions between the attorneys indicating intractable differences between the parties—the same issues as cropped up more than five years earlier—Cluck opted not to set the case for trial as a backup to the motion to enforce after the June 6, 2022 trial setting was passed, and instead waited for a ruling, which came in July, shortly before the deadline.[4]

---

[3] The record does not reflect what happened with that trial setting.

[4] In his motion to retain, Bradt asserted that he "promptly" requested a mid-August trial setting after the trial court ruled on July 7, but that due to his lack of familiarity with the local rules, MetroCare did not receive proper notice. The docket sheet does not reflect a notice of trial setting filed after February 2022.

Further, although we certainly empathize with Bradt's tragic loss, his own long-term illness, and his ensuing depression, as did the trial court, we cannot ignore that during the entire case, Cluck was also represented by Hudler, who the record reflects was an active participant in the case at least well into spring 2022 and who did not seek to withdraw from the case until September 2022.

"Lack of diligence need not amount to abandonment for a case to be properly dismissed," and "[b]elated activity, such as requesting a trial setting, will not conclusively show that a case has been diligently prosecuted." *WMC Mortg. Corp. v. Starkey*, 200 S.W.3d 749, 752 (Tex. App.—Dallas 2006, pet. denied). Given the history of the case, including the *more than a decade* of time on file, the lack of Cluck's overall activity in the case, and Cluck's asserted excuses for delay, we affirm the trial court's order dismissing the case for want of prosecution. *See id.*; *cf. Dobroslavic*, 397 S.W.3d at 730 (plaintiffs' "arguments focused on their desire to prosecute this case and their trial readiness," but "reasonable diligence in prosecuting a suit is not established simply by a belated trial setting or a stated readiness to proceed to trial"; at time of dismissal, suit had been pending for seventeen months with two-month "complete lack of activity in the case from October 2010 to January 2012," and plaintiffs offered no excuse for delay in prosecuting suit).

## CONCLUSION

We have held that the trial court did not abuse its discretion in dismissing the case for want of prosecution. We overrule Cluck's sole issue on appeal and affirm the trial court's final order.

13

_____

Edward Smith, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed:   November 14, 2024