

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00153-CV

———————————————

IN THE INTEREST OF E.W., A CHILD

On Appeal from the 322th District Court
Tarrant County, Texas
Trial Court No. 322-721172-22

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant M.K. (Mother) challenges the trial court's order naming her as possessory conservator of her child, Elias.[1] In Mother's sole point on appeal, she argues that the trial court abused its discretion by failing to name her as Elias's managing conservator. Because we hold that the trial court did not abuse its discretion, we will affirm.

## Procedural Background

In 2018, Mother faced a charge of child endangerment with respect to her older son[2] and was placed on deferred adjudication community supervision. The trial court subsequently revoked her community supervision, convicted her, and sentenced her to 10 months' confinement in the state jail facility. In April 2022, she was charged with possession of methamphetamine, and she was again placed on deferred adjudication community supervision.

In August 2022, the Department of Family and Protective Services filed a child protection suit involving Elias, who was then almost two years old. The Department had concerns about the parents' substance abuse, allegations of domestic violence

---

[1]We use aliases to identify the child and his relatives. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2) & cmt.

[2]Mother does not have custody of her other son, who was nine at the time of trial, and her visitation with him must be supervised. Mother claimed that she "was not able to attend that court date, so [she] kind of had no say of what was going on there" with respect to custody and visitation.

between them, and an allegation that Mother had held a knife to Elias's stomach during an argument with his father (Father).

In the July 2023 final order in that suit, the Department was named as Elias's permanent managing conservator. His paternal grandmother (Grandmother) was named as temporary possessory conservator, and his parents were named as possessory conservators.

Grandmother subsequently filed a petition[3] to modify the parent–child relationship, seeking to be named permanent managing conservator and to have the Department removed as managing conservator. Mother filed a counterpetition in February 2024, requesting that she and Father be named as managing conservators. In June 2024, the Department filed its own modification petition seeking the same relief as Grandmother. The trial court's final order named Grandmother as permanent managing conservator, removed the Department as managing conservator, and left Mother and Father as possessory conservators, with Mother's possession to be (1) supervised for six months and conditioned on her having negative drug and alcohol tests during that time, as specified in the order's "Attachment A" and, after that, (2) in accordance with the schedule set out in the attachment.[4] Mother appealed.

---

[3]We do not have Grandmother's original petition to modify in the record, but she filed her first amended petition to modify in December 2023.

[4]The order further set out what would happen if Mother continued to test positive on random drug and alcohol tests or if she refused to test.

3

## Standard of Review and Applicable Law

A trial court may modify a conservatorship order if the party seeking modification proves by a preponderance of the evidence that modification would be in the child's best interest and that (among other possible grounds) "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the order's rendition. Tex. Fam. Code Ann. § 156.101(a)(1)(A). We review a trial court's modification order for abuse of discretion. *In re R.R.K.*, No. 02-20-00302-CV, 2022 WL 1257136, at *3 (Tex. App.— Fort Worth Apr. 28, 2022, no pet.) (mem. op.).

A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). A trial court does not abuse its discretion merely by deciding an issue differently than an appellate court would under similar circumstances, *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied), or by deciding an issue based on conflicting evidence so long as some substantive and probative evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

## Discussion

In her sole point, Mother argues that the trial court abused its discretion by failing to name her as Elias's managing conservator. Although not entirely clear, her

brief appears to argue that it was in Elias's best interest for her to be appointed as his managing conservator. *See* Tex. Fam. Code Ann. § 156.101(a).

To determine a child's best interest, courts may use a nonexhaustive list of factors discussed in *Holley v. Adams.* 544 S.W.2d 367, 371–72 (Tex. 1976). Other factors to consider in modification suits include the child's stability and the need to prevent constant litigation in child-custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000); *see also* Tex. Fam. Code Ann. § 263.307 (listing factors that should be considered by the court and the Department in determining whether the child's parents are willing and able to provide the child with a safe environment).

To support her point, Mother points to her testimony that she is currently employed and is the breadwinner for her and Father, that her income is sufficient to support the household if Elias lives with them, and that she and Father had stable housing and had been leasing their home for around two years.

Mother and Father presented some evidence showing that their parenting skills and living situation had improved since the Department became involved with Elias:

- Mother was working full time and earned about $40,000 a year.

- The permanency specialist assigned to the case had no concerns about the house that the parents were renting. The parents had a fire extinguisher and a "safety kit" at the house.

- Even though Mother was on community supervision deferred adjudication for possession of methamphetamine, she had continuously tested negative for methamphetamine since June 2023, the same month in which she was placed on community supervision. At the time of trial,

5

Mother had only about five months left on her deferred adjudication period.

- Mother's community supervision officer testified that Mother had been doing well on probation and that Mother had been easy to supervise.

- Mother completed the counseling services and classes that the Department had requested. *See* Tex. Fam. Code Ann. § 263.307(b)(10) (considering as best-interest factor "the willingness and ability of the child's family to seek out, accept, and complete counseling services).

- The parents' Trust-Based Relational Intervention program[5] provider testified that Mother and Father were "dedicated to changing th[e] maladaptive behaviors that brought [Elias] into care." She described the parents as "very receptive to the program" and as having had "profound growth." *See Holley*, 544 S.W.2d at 371–72 (considering as best-interest factors the parental abilities of the persons seeking custody and the stability of the home); *see also* Tex. Fam. Code Ann. § 263.307(b)(11) (considering "the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time").

- Mother and Father had a plan for Elias's care until he was old enough to be in school; Mother often worked nine- to eleven-hour days, and the parents' plan was to remove him from his current daycare and have him stay home with Father. Relatedly, Grandmother testified that Father had attended some of his doctor's appointments and was appropriately concerned about his son's health. *See Holley*, 544 S.W.2d at 371–72 (considering parental abilities of individual seeking custody).

- Although Grandmother wanted to be named as Elias's permanent managing conservator, she nevertheless acknowledged that by the time of trial, Elias's visits with Mother were going well. She further testified that she was not opposed to Mother and Father having more time with

---

[5] *See D. D. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00772-CV, 2023 WL 3102599, at *3 (Tex. App.—Austin Apr. 27, 2023, pet. denied) (mem. op.) (describing the program as one "designed to train caregivers to provide effective support and treatment for at-risk children").

Elias, which was some indication that she had also seen improvement from the parents.

However, the trial court also had evidence that although Mother appeared to be on the right path, she was not ready to be Elias's managing conservator:

- In a drug test requested by the Department, Mother tested positive for marijuana in December 2024, the month before trial.[6] *See* Tex. Fam. Code Ann. § 263.307(b)(8) (including "whether there is a history of substance abuse by the child's family or others who have access to the child's home" as a factor for courts to consider in best-interest analysis).

- Additionally, the permanency specialist testified that Mother also tested positive for alcohol use three times in 2024—in January, April, and December—in tests requested by the Department.[7] Aside from the tests, Mother admitted that she had occasionally had alcohol during the case.

- Mother's use of marijuana and alcohol were (1) after Grandmother filed her petition to modify and (2) a violation of Mother's community supervision terms and subjected her to a risk of imprisonment.

Admittedly, the trial court had some contrary evidence suggesting that Mother had been compliant with her community supervision conditions, including the requirement that she abstain from drugs and alcohol, but the trial court did not have to find that evidence persuasive, *see In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (noting that factfinder is the sole judge of the witnesses' credibility and demeanor):

---

[6]Mother's attorney objected in the trial court to the admission of Mother's substance testing results, but she does not raise any complaint about their admission on appeal.

[7]Father also tested positive for alcohol several times in 2024.

- Mother's community supervision officer testified that Mother had been regularly submitting to drug and alcohol tests for her community supervision and that those tests were all negative.

- But the trial court could have found that this testimony did not refute Mother's positive December 2024 tests because the officer could not remember when in December 2024 Mother had submitted to testing for her community supervision or even if she tested that month at all.

- Additionally, regarding the positive alcohol tests earlier in 2024, the community supervision officer testified that alcohol "only stays in your system for a couple of days, maybe like three days or so," and Mother presented no evidence of when she had negative alcohol tests for her community supervision or if those tests were done around the same time as her positive tests for the Department.

Elias came into care in part because of Mother's substance use, and Mother's testing positive for drug and alcohol use while this modification case was pending is evidence that support's the trial court's best-interest determination. *See In re Z.F.*, No. 07-21-00138-CV, 2021 WL 5770174, at *5 (Tex. App.—Amarillo Dec. 6, 2021, no pet.) (mem. op.). Further, using marijuana or alcohol was a violation of Mother's community supervision terms and subjected her to a risk of imprisonment. *See In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet.) (mem. op.). Considering that Mother is the breadwinner for the family, this risked the parents' ability to provide a stable home for Elias. *See id.* And because of Mother's history of drug and alcohol use, including during these proceedings, the trial court could have considered the possibility that her substance use could recur in the future. *See id.*

The substance-use evidence was the most significant evidence supporting the trial court's decision, but the trial court also had evidence from which it could have determined that Elias's need for stability was best met by Grandmother's continuing to be his managing conservator. *See V.L.K.*, 24 S.W.3d at 343 (considering child's need for stability).

- By the time of trial, Elias was a little over four years old and had been living with Grandmother for around two-and-a-half years.

- Elias is autistic and is mostly nonverbal. As of the time of trial, he had only recently begun saying some words. Additionally, when Elias went to live with Grandmother, he had some significant medical problems, some of which had not yet resolved by the time of trial. *See* Tex. Fam. Code Ann. § 263.307(b)(1) (considering child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72 (considering a child's emotional and physical needs now and in the future).

- Elias was receiving speech therapy, and he still had "a lot of doctor's appointments[ and] therapy appointments." Grandmother had two licensed caregivers to help her take care of Elias. If Grandmother could not leave work to take him to a therapy appointment or to pick him up from daycare, one of the caregivers did so. In other words, Elias had complex needs, and Grandmother had been ensuring that those needs are met. *See Holley*, 544 S.W.2d at 371–72 (considering parental abilities of individual seeking custody).

- Grandmother further stated that Elias was "thriving" and had improved in the way he plays, socializes, and makes eye contact. In other words, Elias was doing well in her care. Additionally, Elias had the same caregivers since he went to live with her, which is some evidence that he had stability and routine in Grandmother's care. *See E.M.*, 2025 WL 1240792, at *10 (considering in best-interest analysis whether child had bonded with caregivers and was well-cared for by them).

- Grandmother testified that Elias "was not good with changing of routines at all." When he first began having visitations with the parents,

9

he would have "meltdowns, anxiety attacks" afterward. By the time of trial, he had improved, but he was still "a little wound up" by visits. This testimony was some evidence from which the trial court could find that Elias would need to adjust little by little to a change as significant as changing his home and primary caregivers and that it would thus not be in his best interest to change managing conservatorship to Mother.

- Additionally, some evidence raised a doubt about the adequacy of the parents' initial plans for Elias to stay at home with Father rather than attend daycare. The permanency specialist testified that from March 2024 to September 2024, Father had missed seven of his supervised visits with Elias and had left other visits early because he "had things to do." The permanency specialist's testimony could have raised a concern for the trial court that Father was not prepared to provide the kind of care that Elias required on a daily basis. Additionally, Grandmother testified that Elias loved his daycare. Pulling him from that program would add yet another change to his routine on top of changing his home and primary caregivers.

Moreover, the Department and Elias's guardian ad litem recommended that Grandmother be named as permanent managing conservator.

- The permanency specialist testified that Grandmother being named as permanent managing conservator had been the primary goal in the prior child protection suit and that the permanency specialist's recommendation at the trial in that suit—which resulted in the July 2023 final order being modified in this proceeding—had been to "give [G]randmother more time to get licensed [for a 'fostering and connection program'] to give [permanent managing conservatorship] to [G]randmother."

- Elias's guardian ad litem told the court that in his opinion, it was in Elias's best interest for Grandmother to be named as permanent managing conservator because "she provide[d] stability, financial and household family stability to . . . care [for Elias]," which she had demonstrated "in the [nearly] three years she's had him," and that there was no "indication that there's enough information to justify a change from that."

10

Elias's need for stability and routine, the evidence of the good care that he was receiving with Grandmother, and with Mother's testing positive for alcohol (let alone marijuana) while on community supervision and while this case was pending, all weigh in favor of the trial court's decision. Although Mother has made commendable strides, we cannot say that the trial court abused its discretion in deciding that, at this time, it was not in Elias's best interest for her to be named as his managing conservator. *See Unifund CCR Partners*, 299 S.W.3d at 97 (stating trial court does not abuse its discretion by deciding issue based on conflicting evidence). We overrule Mother's sole point.

## Conclusion

Having overruled Mother's sole point, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: August 21, 2025

11