

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00831-CV

**IN THE INTEREST OF K.W.**, a Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CI14901
Honorable Rosie Alvarado, Judge Presiding

Opinion by:    Velia J. Meza, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               H. Todd McCray, Justice
               Velia J. Meza, Justice

Delivered and Filed: November 12, 2025

AFFIRMED

Father appeals a final judgment in a suit affecting the parent-child relationship involving his son, K.W.[1] He contends the trial court improperly excluded evidence, erred in the custody arrangement, and incorrectly calculated child support. We hold that Father failed to preserve error regarding the exclusion of evidence and that the record supports the trial court's custody and child support determinations. Therefore, we affirm the trial court's judgment.

---

[1] To protect the identity of the minor child, we refer to appellant as "Father," to appellee as "Mother," and to the child by initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

BACKGROUND

This appeal arises from a bench trial conducted on November 18, 2024. The parents' relationship began when Mother was in middle school. K.W. was born in 2016, when Mother was one month shy of turning eighteen. Father, who is approximately five years older than Mother,[2] testified he was actively involved in K.W.'s care from birth, assisted with Mother's needs, and babysat Mother's niece, who was approximately the same age as K.W. The parents never married.

Father lives in Bexar County with his wife and their three other children. He testified that he works in business development, receiving a biweekly salary of approximately $1,000, and continues to receive substantial support from his parents and their family-owned restaurants. He proposed a 50/50 possession schedule, that neither parent serve as primary conservator, and requested $500 monthly child support.

Mother resides in Bexar County with her fiancée and two dogs. She works full time as an escrow assistant. She maintains K.W. on her health insurance and pays her share of premiums, oversees his medical and dental appointments, and coordinates his schooling. Mother requested that she be designated primary managing conservator with an extended standard possession order for Father and appropriate child support.

The trial court appointed both parents as joint managing conservators, granted Mother the exclusive right to designate primary residence of the child, ordered an extended standard possession schedule for father (including holidays and right of first refusal for periods exceeding four hours), and set child support at $500 for December 2024 and $800 per month beginning January 1, 2025. Additionally, the court imposed a geographic restriction on Mother to Bexar

---

[2] During cross-examination, Father repeatedly invoked his Fifth Amendment privilege against self-incrimination when questioned about the circumstances of K.W.'s conception and Mother's status as a minor at the time.

County and contiguous counties and ordered the parents to communicate using AppClose. This appeal followed.

## DISCUSSION

Father challenges the trial court's custody and child support determinations. Father also contends the trial court erred by excluding evidence. We address each issue in turn.

## 1    Custody

We review a trial court's custody determination for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules of principles, *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam), or when it fails to analyze or apply the law correctly, *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). As to factual matters, the trial court does not abuse its discretion when at least some evidence of a substantive and probative character supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

Father argues that the trial court erred by ordering standard possession and granting Mother the exclusive right to designate the child's primary residence. In support, Father points to his stability and relationship with the child, Mother's reliance on daycare, Mother's failure to keep Father informed of insurance information, and the bias shown by K.W.'s attorney ad litem.

The best interest of the child is the paramount consideration in custody and possession suits. TEX. FAM. CODE § 153.002(a). It is rebuttably presumed that the best interest of the child is served by a standard possession order. *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (citing TEX. FAM. CODE § 153.252).

Aside from the revelation that Father began a sexual relationship with Mother when she was a minor, the evidence adduced at trial was equivocal on the fitness of each parent. The

testimony showed that both parents had a relationship with K.W., both had a history of appropriately caring for him, and both desired custody. The trial court could have reasonably inferred that the standard possession order was in the child's best interest. *See Butnaru*, 84 S.W.3d at 211.

The instances Father identifies do not rebut this inference. Father does not explain how Mother's supposed reliance on daycare affects K.W.'s best interests. *Cf. In re W.J.M.*, No. 04-20-00532-CV, 2022 WL 946636, at *5 (Tex. App.—San Antonio Mar. 30, 2022, no pet.) (mem. op.) (noting that a parent's inability to pick child up on time from school was relevant to whether equal possession order was in the best interest of the child). And the record does not support Father's claims that the child's attorney ad litem showed bias, nor does Father explain how any such bias should result in reversal of the court's custody determination.

The record similarly fails to support Father's claim that Mother refused to apprise him of health insurance information. Father testified that K.W. fell on his arm "just from standing to falling," and that he asked Mother "if we should take him to the hospital, but she never responded." When Father later dropped K.W. off with Mother, he did not inform her of the injury because he "tried to reach out to her already, and she hadn't responded." According to Mother, however, Father sent her a message merely requesting K.W.'s health insurance information, with no indication the child had suffered an injury.

The trial court "is the sole judge of the witnesses' credibility and the weight to be given their testimony, and is free to resolve any inconsistencies." *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000). The trial court could have reasonably concluded that Mother and Father were each capable caregivers. Accordingly, at least some evidence of a substantive and probative character supports the implementation of a standard possession order and granting

Mother the exclusive right to designate the child's primary residence. *See Butnaru*, 84 S.W.3d at 211.

Under the highly deferential standard of review applicable here, we cannot conclude the trial court abused its discretion in ordering standard possession. *See Gillespie*, 644 S.W.2d at 451. We overrule Father's second and third issues.

## 2 Child Support

Chapter 154 of the Texas Family Code governs a trial court's discretion to set child support. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Absent a clear abuse of discretion, a "court's order of child support will not be disturbed on appeal." *Id*. (quotation omitted). When a parent is intentionally unemployed or underemployed, the "trial court has the discretion to apply the support guidelines to the earning potential of an obligor." *Id*. at 81; TEX. FAM. CODE § 154.066.

Father argues the trial court erroneously found he was intentionally underemployed and "mischaracterized" his available resources as including money he reinvested in his businesses and money he received from family members.

The record reflects that Father owns at least three businesses, pays his wife approximately $5,000 a month for work performed at two of his businesses,[3] previously received $1,000 per month from his parents for working at their restaurants, that his parents cover the $1,300 mortgage payment for his second house, that his parents cover his $1,100 car payment, and that his parents pay his bills. Father claimed to have no available resources from which to pay child support,

---

[3] Ordinarily, a spouse's net resources may not be used when computing the amount of child support to be ordered. TEX. FAM. CODE § 154.069. However, when there is a finding of intentional underemployment and "[i]n the absence of evidence of a party's resources," the trial court "shall consider relevant background circumstances regarding the obligor." *See id.* § 154.0655. We conclude that it was reasonable for the trial court to consider the amount Father pays in wages to his wife when determining his earning potential.

stating, "I don't think money is the only support that a child can have." However, Father expressed a willingness to get a job if necessary.

Texas law requires parents to support their children during their minority. *Iliff*, 339 S.W.3d at 81. A parent cannot evade this responsibility by voluntarily remaining unemployed or underemployed. *Id*. On this record, the trial court could have reasonably concluded that Father was intentionally underemployed and, given his numerous business ventures and subsidized lifestyle, that Father had a monthly net earning potential of at least $5,424, supporting the $800 monthly child support award. *See* TEX. FAM. CODE § 154.129(a) (assuming four children for which Father has a duty of support, three of which are outside this action). Father's fourth issue is overruled.

**3      Exclusion of Evidence**

We turn to Father's final remaining issue: his contention the trial court should have allowed a video exhibit to be admitted. We review evidentiary rulings for abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). Even if a trial court abuses its discretion on evidentiary matters, "reversal is only appropriate if the error was harmful, *i.e.*, it probably resulted in an improper judgment." *Id*.; *see also* TEX. R. APP. P. 44.1(a). "Reversible error does not usually occur in connection with evidentiary rulings unless the whole case turns on the particular evidence admitted or excluded." *In re C.C.O.*, 714 S.W.3d 198, 210 (Tex. App.—San Antonio 2024, no pet.) (quotation omitted).

There are two ways to preserve error when evidence is excluded: "the offer of proof (formerly referred to as an informal bill of exception) and the formal bill of exception." *Id*. (quoting *Fletcher v. Minnesota Min. & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). An offer of proof is made before the court but outside the presence of the jury and must be captured on the record. *C.C.O.*, 714 S.W.3d at 210–11. Such an offer consists of "a

short, factual recitation of what the evidence would show to preserve the issue for appeal." *Id*. at 211 (quoting *Matter of Marriage of Rangel & Tovias-Rangel*, 580 S.W.3d 675, 680 (Tex. App.—Houston [14th Dist.] 2019, no pet.). When no offer of proof is made at trial, an appellant must introduce the excluded evidence into the record by a formal bill of exception in order to preserve error. *C.C.O.*, 714 S.W.3d at 211 (citing TEX. R. APP. P. 33.2). Without an offer of proof or bill of exception, we cannot meaningfully review whether exclusion of the evidence was harmful. *C.C.O.*, 714 S.W.3d at 211.

In his brief, Father concedes that he failed to preserve error. Even if Father had properly preserved error, however, according to his testimony, the video was taken from his doorbell camera during drop-off and purportedly depicts Mother's partner—whom Father described as a physically intimidating woman—speaking in a "condescending [tone] . . . kind of like disgust." Given the entire record, we cannot say the custody and child support determinations turned on the demeanor of Mother's fiancée. Father's final remaining issue is overruled.

**CONCLUSION**

Having overruled each appellate issue, we affirm.

Velia J. Meza, Justice
